January Term,
1862.

FALVEY VS. NORTHERN TRANSPORTATION COMPANY.

FALVEY
v.
NORTHERN
TRANSP. Co.

| 15 | 129 |
| 97 | 36 |

Whether a common carrier can limit or evade his common law liability by an express contract, *quære*.

Where a condition that the owner of goods assumed the risk of loss by lake navigation, and damage from unavoidable or accidental delay, was contained in a bill of lading delivered to the shipper in New York, but the owner of the goods lived in Wisconsin, and there was no proof that he ever assented to or had any knowlege of such condition, the court would hardly feel authorized to say that there was a special contract between the parties, by which the owner agreed to take any risk which the law would otherwise impose upon the carrier.

Where the goods mentioned in such bill of lading were delivered to a transportation company in the city of New York on the 10th of November, to be carried to a port in this state, by steam on the lakes, and the goods were not received at Buffalo until the 22d or 23d, though the usual time for transporting goods between those cities by such company was only about three days; and a few hours after leaving Buffalo, the vessel on which the goods were put was wrecked and the goods lost: *Held*, that the delay in transporting the goods to Buffalo, was, in view of the increased dangers of lake navigation as winter approached, *prima facie* proof of negligence, and cast upon the company the burden of showing that the delay was fairly within the exception contained in the bill of lading.

APPEAL from the Circuit Court for *Racine* County.

This was an action to recover the value of six cases of steel which the defendant undertook to transport from the city of New York to Racine in this state. The complaint stated that the defendant received the steel at the city of New York on the 10th of November, 1860, for transportation to Racine, each case marked "Thomas Falvey, Racine, Wis., N. T. Co.'s Express—steam on lake;" that on or about the 23d of that month, the steel was placed by the defendants on the propeller "Dacotah" at Buffalo, and on the same day the vessel was wrecked and the steel lost; that said steel "was not shipped by express and according to the terms of the agreement, but was carelessly and negligently shipped, and was suffered to delay in its transit, in consequence of which the loss occurred," &c. The answer denied negligence, and alleged that the steel was forwarded with due diligence to Buffalo, where it arrived on or about the 15th of November; that on its arrival it was immediately, in the due course of business, put on board the "Dacotah," a sea-

January Term,
1862.

FALVEY
v
NORTHERN
TRANSP. CO.

worthy vessel then loading at Buffalo and bound, on her next voyage, for Racine; that said vessel was engaged from the 15th to the 19th of the month in receiving her cargo; and that when fully laden she was detained at Buffalo by stress of weather for three or four days, until, on the 23d, she left in favorable weather, but was lost, on the same day, with her cargo, by the perils of navigation, without fault of the defendants. The only evidence as to the time when the steel arrived at Buffalo, was that of the tally clerk on the dock at that city, for the Buffalo, Cleveland and Chicago line of propellers, who testified that it was received by them on the 22d of November, from the Buffalo, N. Y. and Erie Railroad Company, and was shipped the next day on the "Dacotah," a vessel belonging to that line, which started from Buffalo at 8 P. M.; and that he did not know when the steel arrived at Buffalo. A deputy collector for the port of Buffalo testified that several vessels left that port for the upper lakes on the 14th, 15th, 17th and 21st of November, but he did not know their freight. They belonged to different lines or owners, and several of them cleared for Chicago. The 22d and 23d of November were quite blustering; the severe gale was on the evening of the 23d. Mr. Joyce, a book-keeper for the Buffalo, Cleveland and Chicago line, stated that the "Galena" and "Wenona" propellers, belonging to that line, left Buffalo for ports on Lake Michigan, one on the 13th and the other on the 21st of November. Mr. Pease, managing agent for the line, testified: "I do not know when the steel arrived at Buffalo, but there was no delay in making the shipment after we received it. For a week or ten days previous to the reception by us of the steel, the weather was so rough and boisterous that no shipments were made to Racine, because the boats were delayed and did not arrive in time, and hence could not leave Buffalo during that time. The boats "Galena," "Wenona" and "Dacotah," were the only boats that left Buffalo for ports on Lake Michigan between the 13th and 23d of November, both inclusive, belonging to our line. I do not know what ports particularly they cleared for on Lake Michigan, except Milwaukee and Chicago." The rest of the evidence, and the finding of the judge,

January Term, 1862.

FALVEY
v.
NORTHERN
TRANSP. CO.

are stated in the opinion of the court. The finding was excepted to. Judgment for the plaintiff.

*C. W. Bennett,* for appellant, to the point that it was competent for the defendant to make a special contract with the plaintiff, limiting his responsibility as insurer, and that the bill of lading was such a contract, cited *Merchants' Bank v. N. J. Steam Nav. Co.,* 6 How. (U. S.), 344; *Dorr v. N. J. Nav. Co.,* 4 Sandf., 136; *Same Case,* 1 Kern., 485; Edwards on Bailments, 468, 490, 499. 2. Relieved of his obligation as an insurer, the defendant was still liable for ordinary negligence, but the burden of proof was upon the plaintiff. Edwards on Bailments, 323, 494, 568, 576; *Norton v. Pope,* 1 Cow., 109; *Cooper v. Barton,* 3 Campb., 5; 9 Wend., 268; *King v. Shepard,* 3 Story, 348; 5 Bing., 217; 5 Barn. & Cress., 327; 19 Johns., 345; 19 Pick., 41; 4 Binney, 127; Story on Bailments, §§ 573–4. 3. Allowing three days for getting the goods to Buffalo, the proof that boisterous weather prevented shipments to Racine for a week or ten days previous to the 23d, accounts for and excuses the delay in not shipping before that date; and the fact that other boats left during that time for other ports on Lake Michigan, cannot affect the case, for it may have been safe to ship to other ports and not to Racine, and besides the appellants were to use their own judgment as to the safety of making shipments.

*P. B. Ladd,* for respondent:

If the goods were thirteen days in transit to Buffalo— the usual time being but two or three days—the delay charges the carrier with negligence and requires him to prove that it was unavoidable. *Bowman vs. Teall,* 23 Wend., 306 —10; *Wibert vs. N. Y. & E. R. R.,* 12 N. Y., 245, 252, per HAND, dissenting; Angell on Carriers, §§ 283–4. If the goods arrived in Buffalo on time, then the fact of their lying there till the 23d before shipment, when every day's delay added to the dangers of lake navigation, is *prima facie* sufficient to charge the carrier, and in connection with the proof that so many vessels left that port for Racine and ports beyond from the 13th to the 22d, seems to be conclusive. That the burden of proof is on the carrier to show that a loss

January Term, arose from unavoidable accident, he cited 11 Ohio, 303; 3
   1862.      Gray, 342–8; Angell on Carriers, §§ 48, 156, 164, 167, 472
   FALVEY     and notes; Story on Bail., sec. 529.  A common carrier can-
     v.       not, even by express contract, limit his liability.  Angell, §§
  NORTHERN
 TRANSP. CO.  275, 54; *Ashmore vs. Transportation Co.*, Am. Law Reg., Oct.
              No., 1861, p. 721.

The bill of lading signed only by the defendant, is at most but a general notice, and not an express agreement; and in order to charge the plaintiff with the burden of proof of negligence, the notice must be brought home to him at or before the time of shipment.  There is no proof that the plaintiff ever received the bill of lading, or that he had any agent in New York who received it.  Angell, §§ 247, 268; 2 Greenl. Ev., §§ 259, 216.

May 15.          *By the Court*, COLE, J.,   It is an admitted fact that there was a delay of twelve or thirteen days in transporting the six boxes of steel in controversy, from New York to Buffalo. The testimony is very clear upon the point, that the usual time for transporting goods by the appellant's line between those cities, is about three days.  The boxes of steel were delivered to the carriers in New York on the 10th of November, to be transported, by steamboat on the lakes, to Racine.  It appears that the goods were shipped on a propeller from Buffalo on the 22d or 23d of the same month, and that the vessel was, within a few hours after leaving port, wrecked twenty miles or so from Buffalo harbor, and the goods lost.  The circuit court found as a matter of fact, that the company did not exert such care and diligence in the transportation of the goods as to exonerate itself from liability for the loss, but was guilty of negligence.  And in view of the conceded facts in the case, we think this is undoubtedly correct.

It is insisted by the counsel for the appellant, that there was a special contract, by which the carrier limited his responsibility as an insurer of the goods.  The bill of lading stated that the owner assumed the risk of loss or damage by river or lake navigation, and all damage arising from unavoidable delay.  The clause was in a private bill of lading

given by the company on receipt of the goods. It is one of those efforts on the part of common carriers to limit the liability which the law imposes upon them. There is nothing in the case tending to show that the owner of the goods ever assented to this limitation of responsibility on the part of the company, or that he ever had any actual knowledge of the existence of such a condition in the bill of lading. We should hardly feel authorized, upon the evidence, in saying that it showed there was a special contract entered into between the parties, by which the owner agreed to take the risk of loss of his goods in a case where the law would otherwise impose it upon the carrier.

And the authorities are not uniform even upon the proposition that a carrier may limit or evade his common law liability by an express contract. There is great force in the argument that upon grounds of public policy they ought not to be permitted to do so. But that question is not involved in the case. For giving the appellant the full benefit of this condition in the bill of lading, we are still of the opinion that the evidence shows such a delay in transporting the goods from the city of New York to Buffalo, as to establish at least a *prima facie* case of negligence, and throw upon the company the burden of showing that the delay was unavoidable, and fairly within the exception. Surely the owner could not be said to assume the risk of loss by lake navigation, except upon the condition that the goods were forwarded to Buffalo and shipped with all reasonable dispatch. Considering the season of the year, and the increasing liability of the lakes to severe and perilous storms as winter approaches, no one could say that a delay of ten days was an unimportant circumstance. Indeed, the result showed that this delay in the shipment of the goods was attended with disastrous consequences. For the boat upon which they were shipped was wrecked in a few hours after leaving the harbor. And the burden of proof was upon the carrier to explain the cause of the delay, and show that it was unavoidable. This was not done, although a *prima facie* case of negligence was made out against the company.

January Term, 1862.

We are therefore of the opinion that the judgment of the circuit court is correct and should be affirmed.

Judgment affirmed.