THE DETROIT & MILWAUKEE RAILROAD COMPANY VS. THE FARMERS' & MILLERS' BANK of Milwaukee.

*Common carrier—Railroad company—Limitation of liability by express contract.*

1. A railroad company may limit its liability as a common carrier to the line of its own road, by express contract.
2. Where a receipt for goods given by the D. & M. R. R. Co. stated that the goods were "addressed to H. & S., Agent, New York, to be sent by the D. & M. R. R. Co., subject to their tariff, and *under the conditions stated on the other side*—care

The Detroit & Milwaukee R. R. Co. vs. The Farmers' & Millers' Bank of Milwaukee.

Swift Sure Line, Albany. [Goods described] through to New York, at $1.95 per barrel;" and on the other side was a notice, among others, "that all goods addressed to consignees resident beyond the places at which the company have stations * * * will be forwarded to their destination by public carriers or otherwise, as opportunity may offer * * * ; but that the delivery of the goods by the company will be considered as complete, and its responsibility will be considered to have ceased, when such carriers shall have received the goods for further conveyance. And the company hereby further give notice that they will not be responsible for any loss, damage or detention that may happen to goods so sent by them, if such loss, damage or detention occur beyond their said limits :"—*Held*, that these conditions were a part of the receipt; and that it did not import a contract to carry the goods to New York; but constituted a valid limitation of the liability of the company.

*Falvey v. The Northern Transportation Company*, 15 Wis., 129, explained.

ERROR to the County Court of *Milwaukee* County.

The action below was brought by the bank against the railroad company, to recover damages for losses upon flour shipped by the company's road, addressed to consignees in the city of New York, in consequence of delay in the transportation of the same, and also in consequence of careless handling. The receipt and bill of lading is set forth in the complaint as follows : "Detroit and Milwaukee Railroad, Milwaukee, January 3, 1862. Received from account of H. H. Camp, Cashier, the undermentioned property, addressed to Hoffman & Stevens, Agent, New York, to be sent by the Detroit & Milwaukee Railroad Company, subject to their tariff, and under the conditions stated on the other side. Care Swift Sure Line, Albany. [Description of property] through to New York, at $1.95 per barrel. Insured across Lake Michigan. (Signed) William Graham, Agent." One of the defenses was, that the alleged delay and negligence did not occur on the line of said company's road, nor while the flour was in its possession; the company claiming that its liability was limited to losses so occurring, by the conditions printed on the back of the bill of lading, and referred to on the face thereof, and which are set forth in the answer. They are sufficiently stated in the opinion of this court. The cashier of the bank, as a witness for it, testified that his attention was not called by the railroad company to the

conditions on the back of the receipt, and that he never knew of them until he had made a claim for damages. On cross examination he said that he did not personally deliver the flour to the railroad company or receive from it the bill of lading ; that the business was done by and through one Culver, who purchased the flour as agent for and on account of the bank ; that Culver was at that time largely indebted to the bank, and the bank furnished the money to purchase the flour, and whatever it should bring above its cost and the expenses of transportation was to be credited to him on his indebtedness to the bank. The shipping clerk of the railroad company testified that Mr. Culver received the bill of lading. The court below instructed the jury that said receipt or bill of lading " amounted to a contract on the part of the railroad company to transport the flour therein mentioned through to New York within a reasonable time, at and for the price thereing specified per barrel ;" that unless the jury should find from the evidence that plaintiff knew of and assented to the printed conditions on the back of the bill of lading at the time said flour was delivered or said bill of lading accepted, they did not enter into or form part of the bill of lading, so as to amount to an express contract limiting the liability of the company as a common carrier ; and that "if the flour was delivered to the defendant in good condition, and was received by the consignee in New York in bad condition, the defendant was liable for the damages in consequence thereof." The court also refused to instruct the jury, as requested by the railroad company, that " from the fact of the plaintiff's producing the contract and having declared upon it in this action, the legal presumption would be, in the absence of other proof, that the plaintiff knew its contents when he took it," and that " the knowledge of the agent Culver would be equivalent to that of the principal."

Other questions were presented by the record, which, not being passed upon by the court, are here omitted.

Verdict and judgment for the plaintiff below; to reverse which this suit was brought.

*Emmons & Van Dyke,* for plaintiff in error, to the point that the stipulation in the bill of lading for a rate of freight through to New York did not create or imply a contract to carry through, or to assume the liabilities of carriers beyond their own road, cited *Nutting v. Conn. R. R. Co.,* 1 Gray, 504; *Hood v. N. Y. & N. H. R. R. Co.,* 22 Conn., 1; *Elmore v. Naugatuck R. R. Co.,* 23 id., 457; Pierce's Am. R. R. Law, 454; Redfield on Railways, 281–2; *Pa. Central R. R. Co. v. Schwarzenberger,* 45 Pa. St., 208. To the point that a carrier may by contract exempt himself and restrict his liability, they cited *Dorr v. N. J. Steam Nav. Co.,* 1 Kern., 492; *Parsons v. Monteath,* 13 Barb., 353; *Moore v. Evans,* 14 id., 524; *N. J. St. Nav. Co. v. Bank,* 6 How. (U. S.), 382; *F. & M. Bank v. Transp. Co.,* 23 Vt., 205; 45 Pa. St., 208; Redfield on Railways, 267 and notes; 1 Parsons on Con., 703 et seq.; Angell on Carriers, sec. 232 et seq.; and sec. 220 et seq.; Pierce on Am. R. R. Law, 418–19. That Culver's knowledge would bind the bank there can be no doubt. Story on Agency, secs. 127, 132, 135, 139. And that the presumption would be that he knew the contents of the bill of lading, there can be as little doubt. *King v. Woodbridge,* 34 Vt., 565; *Wells v. R. R. Co.,* 24 N. Y., 183; 27 Barb., 140; 5 Hill, 258.

*H. F. Prentiss, contra,* cited *Peet v. The Chi. & N. W. R. R. Co.,* 19 Wis., 118; *Angle & Co. v. M. M. R. R. Co.,* 9 Iowa, 487; Redfield on Railways (2d ed.), sec. 12, p. 282; 27 Vt., 110; 3 Sandf., S. C., 610; 47 Me., 573; 45 Pa. St., 208; *Moore v. Evans,* 14 Barb., 524; *Burtis v. R. R. Co.,* Am. Law Reg. for Jan., 1863, p. 184; *Weed v. S. & S. R. R. Co.,* 19 Wend., 534. To make these "general notices and conditions of carriage" binding upon the consignor and parts of the contract, it must be shown that the consignor had actual knowledge of their existence in the bill of lading, and assented to their limitations of the responsibility of the carrier. *King v. Woodbridge,*

34 Vt., 565; *Falvey v. Northern Transportation Co.*, 15 Wis., 129; *Western Transportation Co. v. Newhall*, 24 Ill., 466; Redfield on Railways, secs. 9, 10, pp. 264–280; *Mich. Cent. R. R. Co. v. Hale*, 6 Mich., 244; *Farmers' & Mechanics' Bank v. Champlain Transp. Co.*, 23 Vt., 205; *Camden & Amboy R. R. Co. v. Baldauf*, 16 Pa. St., 67; Angell on Carriers, p. 251, § 247. Under the English statute now in force, a general notice is void, but the carrier may make a special contract, if it is just and reasonable, and is signed by the party sending the goods; and it is left to the courts to determine whether the contract is just and reasonable. *Simons v. The Great Western Railway Co.*, 37 Eng. Law & Eq. R., 286, cited in note to Redfield on Railways (2d ed.), 300; *Dorr v. N. Y. Steam Nav. Co.*, 1 Kern., 485. And it is pretty broadly intimated in *Falvey v. Transp. Co.*, *supra*, that even with this knowledge and assent on the part of the consignor, the carrier could not, on the ground of public policy, limit or evade his common law liability. *West. Transp. Co. v. Newhall*, and *Mich. Cent. R. R. Co. v. Hale, supra*; Angell on Carriers, secs. 234–246, pp. 239–51; *Hollister v. Nowlen*, 19 Wend., 234; *Cole v. Goodwin*, id., 251; *Gould v. Hill*, 2 Hill, 623; Redfield on Railways, 280; Greenl. Ev., 215. In any event, to bind the consignor by these " general notices and conditions of carriage,'' the *onus* is on the carrier to prove the knowledge of the consignor and his assent to them.    Angell, sec. 247; Redfield, p. 266, sec. 4; 24 Ill., 466; 6 Mich., 244.

COLE, J.    It appears from the bills of lading offered in evidence, that the railroad company limited its liability as common carrier to the line of its own road.    The receipts expressly stated that the property was received by the company to be sent " *subject to their tariff, and under the conditions stated on the other side.*"    Among the conditions on the back of the receipt, was one to the effect that all goods addressed to consignees resident beyond the places at which the company have stations, and respecting which no directions to the contrary shall have

been received previous to arrival at the station, will be forward-
ed to their destination by public carriers, or otherwise, as oppor-
tunity may offer, " but that the delivery of the goods by the
company will be complete, and the responsibility of the com-
pany will be considered to have ceased, when such carriers
shall have received the goods for further conveyance. And
the company hereby further give notice, that they will not be
responsible for any loss, damage or detention that may happen
to goods so sent by them, if such loss, damage or detention
occur beyond their said limits." Thus it will be seen that the
company, by this condition, expressly restricted its liability as
carrier to the line of its road, and did not become responsible
as carrier for the whole route. This circumstance distinguishes
the case from that of *Peet v. The Chicago & Northwestern R. R.
Co.*, 19 Wis., 118. For the contract in that case showed an un-
dertaking to transport the flour to New York, to its destina-
tion, and beyond the terminus of the defendant's road; and
consequently it was held liable as carrier for the whole line.
But not so here. In this case the defendant undertook to car-
ry the flour to Detroit, the terminus of its road, and there de-
liver it to the proper carriers, to be forwarded to its destination.
And it expressly stipulated that it would not be responsible
for any loss, damage or detention that might happen to goods
sent by it, if such loss, damage or detention should occur on
any road besides its own. The receipt, therefore, did not im-
port an undertaking or contract to carry to New York; for we
suppose the conditions on the back of the receipt were parts of
the contract, and must go to qualify and limit the liability of the
company. It will be noticed that this condition is not an effort
to limit the liability of the carrier over its own road, but to ex-
onerate it from responsibility for the default or negligence of
other carriers on other lines of the route. Whether the com-
pany could qualify its common law liability over its own road
by a condition printed on the back of a receipt or bill of lading
in this manner, is a question not now before us. Here the ob-

ligation was to transport the flour safely and seasonably to the end of its road at Detroit, and there deliver it to be forwarded by the proper carriers; and when this was done its full legal duty had been performed. And the company merely stipulated that it should not be held liable for a loss that might happen on a road besides its own, and not that it should escape a liability which the law imposed upon it in discharging its duty as common carrier.

On the argument, *Falvey v. The Northern Transportation Co.*, 15 Wis., 129, was referred to, as favoring the position that a common carrier could not limit his responsibility by a condition in a bill of lading or receipt given for the goods. But really no such question was in the case, and of course none such was decided. The bill of lading in that case was offered in evidence by the defendant, and there was nothing to show that it had ever come to the hands or knowledge of the plaintiff or his agent. And hence it was said, in substance, that the evidence did not show that there was a special contract entered into between the parties, by which the owner agreed to take the risk of loss of his goods in a case where the law would otherwise impose it upon the carrier.

We have not noticed all the points made upon the argument, and do not deem it necessary to do so. The views already expressed are decisive of the case.

*By the Court.*—The judgment of the county court is reversed, and a new trial awarded.