CASE 60—PETITION ORDINARY—FEBRUARY 4.

# Orndorff & Co. vs. Adams Express Co.

### APPEAL FROM LOGAN CIRCUIT COURT.

1. A public notice given by a common carrier, brought home to the knowledge of the shipper, enters into the contract of affreightment, so far as the carrier has the right to impose such terms, either by express or implied contract, not, however, inconsistent with the express contract; but such notice will be considered in construing the contract when its terms do not conflict with the express undertaking.

2. A common carrier, by notices, cannot exempt himself from losses by the malfeasance, misfeasance, or gross negligence of himself or his servants. If, therefore, he or they convert the goods to a wrong use, or make a wrong delivery to a person not entitled to them, or are guilty of gross negligence in the carriage or care of them, the loss must be borne by the carrier. (*Story on Bailments, sec.* 570.)

3. In cases of notices, the carrier is liable for losses and injuries occasioned, not only by gross negligence, but by ordinary negligence, or, in other words, *the carrier is bound to ordinary diligence.* (*Story on Bailments, sec.* 571.)

4. "*Valued under fifty dollars, unless otherwise herein stated.*" The foregoing notice or stipulation is embodied in the receipt or bill of lading which the Adams Express Company gave for eight boxes of boots and shoes, which said company undertook to carry from Louisville to Russellville. *Held*—The Express Company could not exonerate itself from liability for gross, or even ordinary, neglect, by any such stipulation, even if it should be considered that the words in the receipt amounted to such a covenant; but to allow such a limitation, in cases of gross neglect and conversion, would recognize their right to convert other people's property to their own use at their own price.

J. R. UNDERWOOD,                                    For Appellants,

CITED—

1 *Bibb*, 403 ; 2 *Bibb*, 265.

3 *Dana*, 501; 12 *B. Mon.*, 104.

Orndorff & Co. vs. Adams Express Co.

A. G. RHEA,                                    For Appellees;

CITED—

2 *Duvall*, 562; *Adams Express Co. vs. Nock.*

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

This was an action by appellants against appellees for non-delivery on the following

" FREIGHT RECEIPT—WESTERN.

"THE ADAMS EXPRESS COMPANY, GREAT EASTERN, WESTERN, AND SOUTH-
ERN EXPRESS FORWARDERS:

" LOUISVILLE, August 31st, 1861.

"Received of Low & Whitney eight boxes boots and shoes, marked J. G. Orndoff & Co., Adairsville, Ken-tucky, to be forwarded to Russellville only. It is further agreed, and is part of the consideration of this contract, that the Adams Express Company are not to be responsi-ble, except as forwarders, for any loss or damage arising from the dangers of railroad, steamboat, or river navi-gation, leakage, fire, or from any other cause whatever, unless the same be proved to have occurred from the fraud or gross negligence of ourselves, our agents or servants; and we, in no event, to be liable beyond our route, as herein receipted.

"*Value under fifty dollars, unless otherwise herein stated.* All articles of glass will be taken at shipper's risk only, the company refusing to be responsible for any injury by breakage or otherwise.

"Freight paid, $5 50. For the company,

"S. A. JONES."

This lot of boots and shoes, at wholesale prices, were worth three hundred and seventy-six dollars and fifty cents; but the Express Company insists that their respon-sibility cannot exceed fifty dollars; and if this be correct, the judgment is right, but if not, it is erroneous.

As there is no allegation that such a contract was in derogation of the legal rights of this corporation, as de-

fined in its charter, nor authorized by it, we shall only consider the law as applicable to common carriers in general; still, as corporations are mere artificial persons, having no natural rights but only such as are conferred upon them by the terms of their charters, it may be well conceived that natural persons engaged in the carrying business would have capacities to contract and thereby limit their responsibilities, which might not pertain to a corporation, and which public policy, as well as the laws of the land, might refuse to this class of common carriers; for these undertake responsibilities to the public and individuals, in consideration of the exclusive and special privileges conferred by the charter; and it being in the nature of a contract between the sovereign and the company, and the latter having received the consideration, elements enter into the discharge of their duties not pertaining to natural persons as common carriers; and whether corporations should be allowed, by either notice or express contract, to limit their undertakings as expressed in the charter, or by an exercise of power not therein conferred, is a grave question, to be well considered when a proper case for adjudication shall arise.

How far a common carrier may limit his responsibility as to the amount of recovery for gross or even neglect of ordinary diligence, has been extensively considered and adjudicated both in England and the United States. It has been authoritatively settled that a public notice given by a common carrier, brought home to the knowledge of the shipper, entered into the contract of affreightment so far as the carrier had the right to impose such terms, either by express or implied contract, not, however, inconsistent with the express contract; but such notice will be considered in construing the contract when its terms do not conflict with the express undertaking.

Story, in his work on Bailments, section 570, as to the degree of liability which is imposed upon the carrier, notwithstanding such notices, says: "It is clear that such notices will not exempt the carrier from any losses by the malfeasance, misfeasance, or gross negligence of himself or his servants. If, therefore, he or they convert the goods to a wrong use, if he or they make a wrong delivery to a person not entitled to them, or if he or they are guilty of gross negligence in the carriage or care of them, the loss must be borne by the carrier."

And in section 571 he says: "But an inquiry may be made whether the carrier will not be liable also for ordinary negligence, as well as for gross negligence, notwithstanding such notices. * * * * The question may, however, be now considered at rest by an adjudication entirely satisfactory in its reasoning; and, turning upon this very point, in which it was held, that, in cases of notices, the carrier is liable for losses and injuries occasioned, not only by gross negligence, *but by ordinary negligence;* or, *in other words, the carrier is bound to ordinary diligence.*"

It has often been held, that where articles of small compass and peculiar value have been shipped, at the ordinary rates of freight for common articles, without notice to the carrier, that this is a fraud upon him, and he will only be held accountable to the extent of his notice, unless either a conversion or gross negligence be shown.

But here the boxes and articles were specified, and from their very nature the carrier must be presumed to be informed as to the value, at least approximately, and which may also be presumed from the amount of freight collected, which itself was over ten per cent. of the entire amount this corporation now proposes as the utmost limit of its responsibility.

The words "*valued under fifty dollars, unless otherwise herein stated*," contained in the receipt, were doubtless in their printed forms, and inserted there probably by way of notice to shippers, so that articles of great value should not be shipped without disclosing it; but can scarcely be deemed appropriate to such articles as these, which, in themselves, should be deemed notice of their value to the carrier; for, if these words are to be literally construed as a covenant, it would enable a carrier to convert to his own use values of much greater amount, and then insist that his liability had been stipulated for; and thus hold out a temptation to report articles as lost, when in reality they had been converted, with a view of getting them at this nominal sum; and as said by Holt, Chief Justice, in *Lane vs. Colton* (1 *Salk.*, 18), this responsibility " is grounded upon great equity and justice; for, if they were not chargeable for loss of goods, without assigning any particular default in them, they having such opportunity as they have, by the trust reposed in them, to cheat all people, they would be so apt to play the rogue, and cheat people, without almost a possibility of redress, by reason of the difficulty of proving a default particularly in them, that the inconvenience would be very great." (*See Angell on the Law of Carriers, Appendix* 14; *also sec.* 226, *p.* 230.)

In this case the original petition went for a non-delivery. The original answer averred a delivery and reception; but appellees were permitted to withdraw this by leaving a copy, and then put in another answer, merely negativing the allegations of the petition, and setting up the writing; and thereupon moved a dismissal of the petition, because the damages were stipulated at a sum under fifty dollars, of which the court had no jurisdiction. Whereupon the appellant moved the court to be allowed to file an amended petition, averring that defendant had

Orndorff & Co. vs. Adams Express Co.

not delivered the goods, but, through gross negligence, had carried them beyond the point of destination, and had converted them; which the court refused, and dismissed the petition.

As we have seen, the Express Company could not exonerate itself from liability for gross, or even ordinary neglect, by any such stipulation, even if it should be considered that the words of this receipt amounted to such a covenant; but to allow such a limitation, in cases of gross neglect and conversion, would recognize their right to convert other people's property to their use at their own price.' It was an abuse of sound legal discretion, under the state of the pleadings and facts in this case, in the court to refuse the amended petition, and erroneous, in any view of the case, to dismiss the suit for want of jurisdiction.

On the return of the cause, the court will allow either party to amend their pleadings so as properly to present all the legal questions which may be involved in this controversy, and present such other and additional issues as the facts may authorize.

Wherefore, the judgment is reversed, with directions for a new trial and further proceedings as herein indicated.