BROWN *v.* ADAMS EXPRESS CO.

Decided December 13, 1879.

(Absent, MOORE, JUDGE.)

*1879*
*Special Term.*

1. A common carrier for hire by special contract based on a valuable consideration may exempt himself from his common law responsibilities in some respects, but cannot exempt himself from loss or damage which may in any degree be caused by the negligence or misfeasance of himself or his servants.·

2. A common carrier does not by limiting his common law liabilities by special contract thereby become a private carrier; and if loss is sustained, the burden of proof is on him to show, not only that such loss arose from a cause from which he was exempted from responsibility by the terms of his special contract, but also that it arose from no negligence or misfeasance of himself or his servants.

3. A common carrier cannot limit his common law responsibilities by any general notice, though knowledge of such general notice be brought home to the consignor before or at the time he applied to have his goods transported.

Writ of error and *supersedeas* to a judgment of the municipal court of Wheeling, rendered on the 17th day of June, 1878, in an action of *assumpsit* in said court then pending, in which C. P. Brown was plaintiff and The Adams Express Company was defendant, allowed upon the petition of said defendant.

Hon. G. L. Cranmer, judge of the municipal court of Wheeling, rendered the judgment complained of.

Green, President, furnishes the following statement of the case:

This was an action of *assumpsit* brought in the municipal court of Wheeling by C. P. Brown against The Adams Express Company, as common carrier, for damages for the loss of a diamond worth $125.00 which was sent on February 2, 1877, for the plaintiff by the defendant, from Wheeling to Buchanan, Cole & Hull in New York city, the express charges being paid. The declaration was in the usual form, and to it the defendant pleaded *non assumpsit,* and by consent of parties a jury was waived, and the case submitted to the court; and the evidence having been heard, on June 17, 1878, the court rendered a judgment in favor of the plaintiff for $135.20, it being the value of the diamond which had been lost while in the charge of the defendant, with interest thereon till the time the judgment was rendered. The defendant moved the court to set aside this judgment and grant him a new trial, as contrary to the law and evidence, which evidence was all certified by the court.

The plaintiff's evidence proves that on February 2, 1877, he sent to the office of the defendant, in Wheeling, by his store boy a small package containing an uncut diamond worth $125.00, marked to Buchanan, Cole & Hull, No. 10 Maiden Lane, New York, to be carried by the defendant to New York and delivered to the consignees; that the boy delivered the package to one Kyle, the agent of the defendant, and paid the freight thereon, thirty cents. Kyle did not ask the value of the package, and it was not told him. He gave no receipt for the package and did not offer to give any. The plaintiff was a jeweller and frequently sent packages by The Adams Express Company, most of which were valuable. It was not usual for the defendant to enquire the value of a package, they had never to the knowledge of this boy, who took the packages to them frequently, asked the value but on one occasion, which was the first time he

took a package to their office. This package was never received by the consignees in New York. The plaintiff also attempted to prove by two agents of Adams Express Company, whose duty it was to deliver packages in New York to the consignees, that this package had been received at the express office of the company in New York, and had then disappeared, and they suspected a certain person in the employ of the company there of stealing it. This evidence was excepted to, because it was not sufficiently proven that the parties, who made these statements, were in the employ of the company, and if they were, it was not shown that they had any power to bind the company by their statements. The court overruled these exceptions, and received and considered these statements as evidence.

The defendant's superintendent at New York proved that this package was received by the company in Wheeling and shipped to New York, but never reached there, but the same was lost before it reached New York, in what manner they did not know. The defendant proved by Kyle that the plaintiff's boy did not, as he said, deliver this package to him as an agent of this company, and by another agent of the company, Merriman, that the boy did deliver it to him on February 2, 1877, that they always asked the value of packages, and those, who deliver the packages do not generally know their value; and that he asked the value of this package, the boy did not know its value and he endorsed the package "value asked and not given," and that the price paid for the express charges was thirty cents; that packages were charged for according to their size and value. For packages which are not valued the charge is from thirty to fifty cents. If the value had been given to this package as $125.00, they would have charged for its carriage and delivery seventy-five cents. He testified that he always asked of this boy of the plaintiff the value of packages, and always asked Turner & Dillon's boy the value of packages sent by them. But this statement both these boys con-

tradict. The defendants proved that they exercised a discretion in making charges. They charge the banks less than others and at the value of only $1.14 for a $1,000.00 package; but they charge the same to all persons, except when they have made special contract; charge those sometimes, who ship a great deal, less than those, who ship but occasionally. The plaintiff shipped a great many packages; but they had no special contract with the plaintiff about charges. They also proved that at the time this package was sent the defendant used a bill of lading or receipt for packages which was presented to the court, this is a clause in this printed receipt:

" It is a part of the consideration of this contract, and it is agreed that said express company are forwarders only, and are not to be held liable or responsible for any loss or damage to said property while being conveyed by the carriers to whom the same may be by said express company entrusted, or arising from the dangers of railroads or river navigation, steam, fire in stores, depots, or in transit, leakage, breakage, or for any cause whatever, unless in every case the same be proved to have occurred from the fraud or gross negligence of said express company or their servants; nor in any event shall the holder hereof demand beyond the sum of $50.00, at which the article forwarded is hereby valued, unless otherwise herein expressed, or unless specially insured by them, and so specified in this receipt, which insurance shall constitute the limit of the liability of the Adams Express Company."

And they further proved by the plaintiff himself, that he had frequently seen this bill of lading or receipt used by the defendant and knew of the $50.00 limitation therein; that he never read all these clauses in this form of the bill of lading, as he did not think they amounted to much. He had been a jeweller for twenty-five years, and done business with the defendant during all that time, and always understood that the defendant was responsible for full value of the packages, whether receipt

was given or not, if lost by negligence or carelessness of the company; that the agents of the defendant were not in the habit of asking the value of packages; that in his, the plaintiff's, judgment the thirty cents paid was fully sufficient for the size and value of this package shipped. He knew they carried valuable packages at a less rate. The agent of the company expressly states, that he did not offer the plaintiff's store boy a receipt on the day he delivered this package to him, because he knew the plaintiff would not take it.

To this judgment of the circuit court the defendant obtained a writ of error and *supersedeas*.

*C. Boggess,* for plaintiff in error, cited the following authorities :

17 Wall. 380 ; 62 N. Y. 35 ; 3 Wall. 107 ; Story Bailments, §§554, 556, 565, 566 ; 2 Rob. (new) Prac. 529 *et seq.* ; Story Bailments, §§565–568.

*George W. Jeffers,* for defendant in error, cited the following authorities:

55 Pa. 141 ; 42 Mo. 88 ; 43 N. Y. 267 ; 51 N. Y. 166 ; 3 Bush 194 ; 61 Ill. 184 ; 111 Mass. 45 ; 61 N. Y. 592 ; 37 Ind. 44 ; 6 How. 383 ; 1 W. Va. 107.

GREEN, PRESIDENT, delivered the opinion of the Court :

This case presents no difficulty. If we were to exclude from consideration the plaintiff's evidence, which was objected to by the defendant's counsel on the trial, and all of the plaintiff's evidence which was in conflict with the defendant's evidence, the judgment of the municipal court would still be clearly right. Such a mode of considering the evidence by this Court would of course as a general rule be unjust to the plaintiff ; but in this case it would make no difference, for on the admitted facts in this case the defendant was responsible for the full value of the diamond it lost. While perhaps a contract,

which fixed the value of this diamond at less than $125.00 might have diminished the responsibility of the defendant, yet no contract, which it could have made, could have relieved it from all responsibility for the loss of this diamond on the facts admitted by it in this case. For while it was decided by this Court in *Maslin* v. *The Baltimore & Ohio Railroad Company*, 12 W. Va. 180, that as common carrier for hire the defendant by special contract, based on a valuable consideration, might exempt itself from loss or damage, resulting from inevitable accident, though such act was not the result of the act of God or of the public enemy, yet it was at the same time decided, overruling the case of *The Baltimore & Ohio Railroad Company* v. *Rathbone*, 1 W. Va. 87, that it could not by any special contract exempt itself from loss or damage which has in any degree been caused by the negligence or misfeasance of itself or ser-vants. And it is well settled that the admitted facts in this case establish negligence on the part of itself or its servants. Even in Pennsylvania, where it is held that the effect of a special contract is to convert the common carrier into a special bailee for hire, whose duties are governed by the contract, and against whom therefore if negligence is charged it must be proved by the party injured, it has been decided that where goods are lost, while in the custody of the carrier under a special contract, and he gives no account of how it occurred, as was the case here, a presumption of negligence will follow of course. See *American Express Company* v. *Sands, et al.* 55 Pa. St. 140 (5 P. F. Smith); *Clark & Co.* v. *Spence*, 10 Watts 337; *Camden & Amboy Railroad Company* v. *Baldauf*, 16 Pa. St. 78 (4 Harris); *Verner* v. *Sweitzer*, 8 Casey 208.

But really the Pennsylvania doctrine, that the effect of a special contract is to convert the common carrier into a special bailee for hire, whose duties are to be governed by the contract, and against whom therefore, if negligence is charged, it must be proved by the party

*1879
Special Term.*

*Brown v. Adams
Express Co.*

Syllabus 1.

Syllabus 2.

injured, is not good law. The true view is that common carriers are such by virtue of their occupation, not by virtue of the responsibilities under which they rest. These responsibilities may vary in different countries and at different times, or by reason of special contracts, but this does not change the character of employment; and they are still common carriers, it may be with enlarged exemptions from responsibility. See *Railroad Co.* v. *Lockwood,* 17 Wall. 286. And this being the case, as the burden of proof is on a common carrier at common law to prove that he comes within the exemption, that the loss arose from the act of God or from the public enemy, so though these exemptions be enlarged by special contract, he must, to relieve himself from responsibility as he is still a common carrier, prove that the loss arose from a cause which by the contract exempted him from his common law liabilities, and not from his own negligence, the burden of proof to show that he comes within the exemption, and that he has not been guilty of negligence, being upon him, whether he claims that the exemption is allowed by the common law, or by special contract. See *Swindler* v. *Hilliard & Brooks,* 2 Rich. 305; *Baker* v. *Brinson,* 9 Rich. 201; *Davidson* v. *Graham,* 2 Ohio St. 131; *Graham* v. *Davidson & Co.,* 4 Ohio St. 362; *Steel & Burgess* v. *Townsend,* 17 Ala. 247.

If the common carrier, as in the case before us, fails to prove how the loss occurred, he fails to bring himself within any common law exemption from responsibility, or any possible exemption provided for in any special contract. To require more of the consignor in order to make out a *prima facie* case on his part, than that he delivered the goods to the common carrier, and he failed to deliver them according to his contract to the consignee, would be practically to relieve the common carrier from all responsibility; for in ninety-nine out of a hundred cases it would be in the nature of things impossible for the consignor to prove how the loss of the goods occurred.

It is often difficult for the common carrier to furnish any proof of how the loss occurred. It must be presumed in the absence of proof, that such loss arose from the carelessness of the common carrier or his servants ; and such presumption will very generally accord with the facts. If not, it is in the power of the common carrier only, who has charge of the goods, to show how he lost them ; and if lost in a manner which exempts him from responsibility by common law, or by his special contract, and without any negligence on his part, he must prove it. Such being the law, it is obvious that, even had there been a special contract in this case, it could not on the facts admitted have exempted the defendant from responsibility ; for while it admits the loss of the diamond while in its charge, it utterly fails to show how it occurred, or that it was not caused by the negligence of its servants. It is entirely immaterial whether it was stolen by one of the defendant's servants in New York, as the plaintiff endeavored to prove, or was lost before it reached New York, as the defendant's superintendent proves. In either case the defendant was equally responsible ; and therefore the overruling of the defendant's motion to exclude the plaintiff's evidence of how this loss occurred could have been no possible injury to the defendant, and we need not consider whether this objection was properly overruled or not. The evidence so received by the court was utterly immaterial.

We have thus far discussed the case as if there was a special contract, for the sake of argument, but in point of fact there was clearly no special contract in the case ; and the defendant was merely responsible as insurer against everything but the act of God and the public enemy. There is no pretense that any special contract was actually executed by the parties, or either of them, or that any verbal contract was entered into by them actually, which would relieve the defendant from any part of its common law responsibilities. But it is insisted that an implied contract is proved in this case. The plaintiff

admits that he had seen the printed receipt, or bill of freight, which the defendant's agents then used, and was well aware of the provision that the consignor's demand against the company should be limited to $50.00, if the goods were not valued ; and that he knew this at the time the company forwarded this package.   This being admitted by the plaintiff, it is insisted that the law implies his assent that $50.00 should be the limit of the company's responsibility in this case, as the goods were not valued. In other words, that from these facts the law would imply a contract between the parties so modifying the common law responsibilities of the defendant.

To reach a correct conclusion on this question, it is necessary to keep in view the rights conferred in such a case by the common law on the consignor.   If we fail to do this, we are liable to err in deciding whether he has assented to waive these rights.   The duties of the private and common carrier, as well as their responsibilities, and the rights of the consignor against them were strikingly different by the common law.   The private carrier has a right to carry for whom and on whatever terms he pleases; and if the consignor does not assent to any terms which the private carrier chooses to prescribe, he is under no obligation to carry his goods.   Indeed he may arbitrarily refuse to carry them at all for the consignor. The consignor has no right to complain though he refuses to carry his goods unless he will assent to unreasonable terms prescribed by the private carrier, or because he arbitrarily refuses to carry them at all on any terms.   It must therefore follow as a matter of course, that if the consignor in any manner has acquired knowledge of the terms, on which alone a private carrier will transport his goods, and having this knowledge delivers his goods to him to be transported, he thereby agrees to the terms of transportation which the private carrier has prescribed. The law would necessarily imply a contract on these terms, though nothing was said by the parties at the time of the terms on which the goods were to be transported,

1879
Special Term.

Brown v. Adams
Express Co.

But the case is far different where the carrier is a common and not a private carrier. The common law imposes on the common carrier the duty of transporting the goods of all persons who apply; and this duty the law compels him to perform on reasonable terms, and imposes on him responsibilities in carrying them far different from those imposed on private carriers. The common carrier has no right without the assent of the consignor to fix any terms he chooses, as those alone on which he will transport goods; nor can he arbitrarily refuse to carry the goods of any person. If he arbitrarily refuses to transport any one's goods, or if he refuses to transport them for a consignor who offers to pay a reasonable price therefor, unless the consignor will agree to the unreasonable terms prescribed by the common carrier, the person so offering his goods for transportation can sue the common carrier for his refusal; and if in the judgment of the court the common carrier had no reasonable excuse for his refusal, he will be mulcted in damages. See *Jackson* v. *Rogers,* 2 Show. 328; *Jencks* v. *Coleman,* 2 Sumn. 221; *Pickford* v. *Grand Junction Railroad Co.,* 8 M. & W. 377; *The Galena and Chicago Union Railroad Co.,* v. *Rae et al,* 18 Ill. 488. It is because the common law imposes this duty to transport goods of all persons on reasonable terms on common carriers, that common carriers could be sued in an action on the case for their torts in failing to fulfill their duties. See *Bastard* v. *Bastard* 2 Show. 81; *Bennett* v. *The Peninsula and Oriental Steamboat Co.,* 6 C. B. (60 Eng. C. L.) 775.

As the consignor has a right to have his goods transported by the common carrier on reasonable terms, and a right to require that the common carrier should deliver them safely to the consignee, unless he is prevented from so doing by the act of God or the public enemy, unless he agrees that the common carrier may be exempted from this obligation in certain contingencies agreed upon by the parties, it follows that, if he pays the price of trans-

portation demanded by the common carrier, and nothing is said at the time about the common carrier being relieved from any of his common law responsibilities in the transporting of those particular goods offered for transportation, he must have the right of holding the common carrier to all his common law responsibilities, though the consignor knew from having read a public advertisement, that the common carrier regarded the responsibilities thrown on him by the common law as erroneous and unjust, and desired all persons, for whom he transported goods, to relieve him from a portion of these responsibilities. Nor would the case be at all changed by the fact that such advertisement went further, and stated that the common carrier would not transport goods for any one, unless he, the common carrier, was exempted from certain portions of his common law responsibilities. He has no right, as we have seen, by the common law to fix arbitrarily the terms and conditions on which alone he will transport goods; and his claim to have such a right, and his attempt to exercise it by his public advertisement, though known to the consignor, cannot justly be regarded as assented to by the consignor, simply because the consignor has applied to have his goods transported.

If the common carrier means to insist that in transporting these goods for the consignor he means to insist on the modifications of his common law responsibilities mentioned in his public advertisement, he should tell the consignor so at the time the goods are offered for transportation. The consignor then could accept his terms or decline to have the goods transported, or if he deemed the terms on which the common carrier proposed to transport them unreasonable, he could insist that they should be transported by the common carrier on reasonable terms, and if he refused, he could sue him, and the courts would have to determine whether the common carrier had refused to transport the goods without a reasonable excuse. But if instead of informing the con-

signor that he means in transporting the goods he offers for transportation to insist on his terms, he accepts them and receives his price for the transportation, he must be regarded as waiving the terms which he had advertised were the only terms on which he would transport goods, and as transporting them according to the terms and responsibilities imposed by the common law. This he must be regarded as electing to do, in peference to insisting on his terms and getting into a controversy with the consignor which might perhaps involve him in a lawsuit in which he might be mulcted in damages. It is far more reasonable under such circumstances to infer from his silence, that the common carrier had receded from his pretensions to avoid a litigation with the consignor, than that the consignor had agreed to relieve the common carrier from any of his common law responsibilities. Suppose the case was reversed, and the consignor was to advertice publicly that he would transport his goods over the road or in the vehicle of the common carrier only on the terms of the common carrier being absolutely responsible in every case for their loss, even when their loss was caused by the act of God or the public enemy; and suppose the common carrier had read this notice, and afterwards the consignor applied to have goods transported by the common carrier, and paid the price of transportation without saying anything about the responsibilities to which the common carrier was to be held, no one, I suppose, would say that the common carrier ought to be regarded as assenting to the terms of transportation stated in the consignor's advertisement; and yet it would be far more reasonable to draw this inference than it would be to infer that the consignor had assented to the terms of the common carrier which he knew he advertised. It would, I say, be far more reasonable, because the consignor was not bound to transport except upon the terms which he arbitrarily fixed; but the common carrier had no right

1879
Special Term.

Brown v. Adams
Express Co.

1879
Special Term.

Brown v. Adams
Express Co.

arbitrarily to fix his terms, but was bound to transport on reasonable terms.

I conclude therefore that if the common carrier has advertised publicly that he will transport no goods except upon condition that his common law responsibilities are modified in a certain manner, and the consignor reads such advertisement, and knowing its terms applies to have his goods transported, and pays the price demanded by the common carrier, and nothing is said at the time about the responsibilities of the common carrier, he will be subject to all his common law responsibilities, and the consignor cannot be considered as having assented to his advertised terms of transportation, though he knew them, but the common carrier must be inferred to have receded from his advertised terms, and from his silence when he accepted the goods for transportation he must be inferred to have assented to transport them and to hold himself subject to all his common law responsibilities.

The English courts, apparently ignoring the acknowledged difference between a private carrier and a common carrier, decided not only that a common carrier might modify his common law responsibilities to any extent he chose by express contract, but that if he gave public notice of his modifying or even relieving himself entirely from these responsibilities, that a consignor, who had read such public notice, became bound thereby, and if he transported goods, without he had an understanding to that effect, he could not hold the common carrier to his common law responsibilities, and that he must be held to have assented to the terms of transportation of which the common carrier had given public notice, and of which he knew. See *Walker* v. *Y. & N. M. Railway Company*, 2 El. & Bl. (75, Eng. C. L. R.) 750; *Leeson* v. Holt, 1 Stark. 186, (2 Eng. C. L. R. 249); Lord Abinger's opinion in *Walker et al.* v. *Jackson et al.*, 10 M. & W. 173.

The extent, to which these modern English cases went in holding that a common carrier might modify to any

extent he chose his common law responsibilities by express contract, are pointed out by this Court in *Maslin* v. *The B. & O. R. R. Co.*, 14 W. Va. 194 and 195, and also the immense mischiefs produced thereby, and their correction by an act of Parliament passed in 1854, quoted in that case. These decisions partially amounted to an abolishment of the common law rule fixing heavy responsibilities, as a matter of public policy, on common carriers. But the common law was in a great measure restored by this act of Parliament, which not only provided that any modification of these common law responsibilities made by a railroad company by express contract, should be void, unless it was adjudged reasonable by the court, but further that any such special contract must be in writing and signed by the party to be charged therewith or his agents, thus effectually destroying in England all implied contracts in such cases.

1879.
Special Term.
Brown v. Adams
Express Co.

.The extent, to which these English cases were followed in America, so far as they authorized common carriers by special contract to dispense with or modify their common law liabilities, when the goods were lost by the negligence of them or their servants, was also pointed out in the case of *Maslin* v. *The B. & O. R. R. Co.*, 14 W. Va. 180. It was in that case shown that the English decisions were very generally repudiated in America. The English decisions too, as above stated, with reference to the implication of a contract to modify the common law responsibilities of a common carrier also received some countenance from decisions and *dicta* of judges in a few cases in America. See *Singleton* v. *Hilliard & Brooks* 1 Strob. 214 ; *Laing* v. *Colder*, 8 Barr 484 ; *Ordorf* v. *Adams Express Co.*, 3 Bush 194 ; *Camden & Amboy Railroad Co.*, v. *Baldauf*, 16 Pa. St. 67 ; *Brown* v. *Eastern Railroad Co.*, 11 Cush. 99. But the great weight of American authorities is opposed to the views of the English courts on this point, and is in accord with the views I have expressed above. See *Steel and Burgess* v. *Townsend*, 37 Ala. 247 ; *The Farmers and Merchants Bank*

104

v. *Champlain Transportation Co.*, 23 Vt. 205; *The New Jersey Steamboat Co.* v. *Merchant's Bank*, Justice Nelson's opinion p. 382, 383; *Western Transportation Co.*, v. *Newhall*, 24 Ill. 466; *Kimball* v. *Rutland and Burlington Railroad Co.*, 26 Vt. 247; *Dorr* .v. *The New Jersey Steam Navigation Co.*, 4 Sandf. 136 ; *Jones* v, *Voorhees*, 10 Ohio 145; *Nevins* v. *The Bay State Steamboat Co.*, 4 Bosw. 233 ; *Gott* v. *Dinsmore*, 111 Mass. 45; *Blossom* v. *Dodds*, 43 N. Y. 267.

Whether a contract to modify a common carrier's responsibilities can be implied from the acceptance by a consignor or passenger of a receipt or bill of lading, a ticket or check, or other writing which purported by what was written in it or on it, has been differently decided according to the varying circumstances under which it was accepted. See *Rea* v. *Hogan*, 12 B. Mon. 63; *Burgess* v. *Townsend*, 37 Ala. 347 ; *Brown* v. *The Eastern Railroad Co.*, 11 Cush. 97 ; *Falvery* v. *Northern Transportation Co.*, 15 Wis. 129; *Blossom* v. *Dodd*, 43 N. Y. 267 ; *Orndorf* v. *Adams Express Co.*, 3 Bush 194 ; *Belger* v. *Dinsmore*, 51 N. Y. 166 ; *The Adams Express Co.* v. *Stettaners*, 61 Ill. 184 ; *Wescott* v. *Fargo*, 61 N. Y. 542 *The Michigan Southern & Northern Indiana Railroad* Co. v. *Heaton*, 37 Ind. 449.

But we need not consider what would be the effect of the plaintiff's accepting in this case a receipt in the form of the printed receipt used by the defendant as agent, as no receipt was received by the plaintiff or tendered by the defendant. The fact, that the plaintiff had frequently seen the printed form of receipt used by the defendant, and knew its contents, could of course have no more effect than his seeing and knowing the contents of a public advertisement of the defendant, setting out the terms and conditions on which the defendant would transport goods to be those specified in this receipt. And had this been the case, we have seen no special contract modifying in any manner the defendant's common law reponsibilities could have been implied.

This case shows strongly the soundness of the views I have taken of the law on this subject. The agent of the defendant in this case says expressly, that he did not tender to the plaintiff one of these printed receipts, because he knew he would not take it. In other words, the defendant admits that he knew that this contract set out in this printed receipt was not such a contract as the plaintiff would agree to. How absurd then would it be for the law to imply that he did agree to it, when we know the defendant himself drew from his conduct no such inference. There was then no special contract between the parties, and the defendant is of course responsible for the full value of the diamond he for a consideration undertook to transport to New York and there deliver, and which he lost by the negligence of his servants. This conclusion imposes on the defendant no sort of hardship; for the defendant received for his undertaking to transport and deliver the package containing this diamond a compensation twice as large as he charges the bank, a regular customer, for transporting a package of equal value, and the plaintiff was a regular customer, who for twenty-five years had been sending packages by the defendant, and was justly entitled, if not to as much liberality in the charges made against him as the bank, to at least the privlege of not being charged more than double as much, and he was charged more than twice as much. It is true that he had no special arrangement that he should be charged less than a person who sent but a single package on one occasion; and such a person would have been charged twice as much for a package worth $125.00 as the plaintiff was charged. But no doubt the willingness of the defendant's agent to send off this package for thirty cents without ascertaining its value arose from the fact, that he knew that this sum would amply compensate the defendant for the value of any package the plaintiff, a regular customer, would be apt to send off. And it was a full compensation, when the fact is considered that in all probability the plaintiff

frequently sent off packages worth much less than $50.00, for which he nevertheless had to pay thirty cents. The established practice of the defendant to transport for the plaintiff any and all packages without ascertaining their value, or giving a receipt therefor, amounts to an implied contract that he would transport for him any package in his line of business as a jeweller, and charge for them, whether worth more or less than $50.00, as though they were worth that sum; $50.00 being probably more than they would average. There is no pretense that the plaintiff misrepresented the value of this package, either by words or by his mode of packing it; and of course there is no ground for supposing he committed any fraud on the defendant, which could relieve him from his responsibility for the full value of this diamond which was lost. But if the defendant's agent did, as he says, ask the store boy what was the value of this package, knowing, as he must have known, that in all probability he did not know, and then endorsed on the package, as he says he did, "The value asked and not given," and this was done with a view of bringing to bear on the plaintiff the provision in this printed receipt, and to prevent him from recovering more than $50.00, when he knew, as he says he did, that the plaintiff would not sign such a receipt, it seems to me he was going further in the service of his employer than was just to his customer, the plaintiff.

The judgment of the municipal court of Wheeling in this case must therefore be affirmed; and the defendant in error must recover of the plaintiff in error his costs in this Court expended, and damages according to law.

JUDGES HAYMOND AND JOHNSON CONCURRED.

JUDGMENT AFFIRMED.