THE INDIANAPOLIS, BLOOMINGTON, AND WESTERN RAILWAY
COMPANY *v.* BEAVER.

RAILROAD.—*Freight Train.*—*Passenger.*—Where a person was travelling on a railroad, in a caboose car, in charge of his stock and furniture, and an entry in reference to him had been made on the way-bill by the assistant superintendent, thus : "a man in charge," he was a passenger, and was entitled to all the rights and remedies of a passenger, though perhaps not entitled to the use by the company of all the appliances for the safety of passengers that would be used on passenger trains. But in whatever class of cars a railroad company undertakes to convey its passengers, its duty is to so manage such train that passengers shall not by its own carelessness be killed or injured.

The Indianapolis, Bloomington, and Western Railway Company *v*. Beaver.

SAME.—*Freight Train Carrying Passengers.*—*Duty of Company.*—Where a railroad company carries for hire, in a caboose car on a freight train, all passengers that apply, it becomes to some extent a passenger train, and the company is bound to use such safeguards for the protection of its passengers as science and skill have devised, and such as experience has proved to be efficacious in accomplishing their object on such a train. Slight care is not sufficient. It is bound to employ all the means reasonably in its power to prevent accidents and protect passengers.

SAME.—*Instruction to Jury.*—*Public Policy.*—In an action against a railroad company for an injury to the plaintiff while a passenger, resulting from the negligence of the defendant, an instruction, that public policy demands that the law should be applied as rigidly to railroad companies as to any other species of common carriers, is not calculated to mislead the jury.

SAME.—*Evidence.*—*Negligence.*—*Accident.*—*Instructions.*—In such an action, the court instructed the jury, that the plaintiff was not bound to prove more than enough to raise a presumption of negligence on the part of the defendant and resulting injury to himself; and the court also instructed that it was incumbent on the plaintiff to show to the satisfaction of the jury, by a preponderance of the evidence, some carelessness or neglect on the part of the railroad company, which resulted in the injury of the plaintiff; that if the injury was the result of an accident which ordinary prudence could not have prevented, the defendant was not liable to the plaintiff for anything.

*Held*, that if there was any error in these instructions, it was fully corrected by one given at the instance of the defendant, that the railroad company was only bound to exercise ordinary prudence to prevent the injury; and that if the jury believed from the evidence that the defendant was not guilty of negligence, the plaintiff could not recover; and that negligence consisted in not doing those things which a reasonable man in managing his own property would have done, under the circumstances shown in the evidence, or in doing those things which a reasonable man would not have done in managing his own property, under the circumstances shown in the evidence.

PRACTICE.—*Reason For New Trial.*—A statement of a reason for a new trial, that the court erred in admitting evidence in behalf of the plaintiff over the defendant's objection, is too general.

APPEAL from the Montgomery Common Pleas.

OSBORN, C. J.—The appellee complained of the appellant, and alleged that he was a passenger on the road of the appellant, and whilst such passenger and riding in a car of the company, by the negligence and carelessness of the servants, agents, and employees in charge of the train and car in which he was riding, and without his fault, the car was thrown from the track and overturned, and by means thereof he was greatly injured; that he was put to great expense for

medical attendance, etc. The complaint contains four paragraphs. We do not consider it necessary to set out the averments of the different paragraphs. The purpose of the pleader was to vary the statements so as to cover the case which might be made by the evidence. The appellant filed separate demurrers to each paragraph of the complaint, which were overruled; but as no error is assigned for overruling the demurrers, we need not notice them.

An answer was filed in three paragraphs; first, the general denial; second, that the appellee was not a passenger as alleged in his complaint; third, the appellant was carrying the appellee at his special request, free of charge, upon a regular freight train, upon which all passengers were forbidden to ride, of which he had notice; that at his special request the company agreed to carry him free, in consideration that he would, and did, agree to release the appellant from all risks of personal injury, and from all damages arising thereupon on account of any error or default by the appellant.

A motion to strike out the second paragraph was made and sustained, and a demurrer was filed and overruled to the third, to which the appellee then filed a reply. There was a trial by jury, and verdict for the appellee for seven hundred and fifty dollars. Motion for a new trial overruled, exceptions, and final judgment on the verdict.

The causes stated in the motion for a new trial were, first, because the damages were excessive; second, because the verdict was not sustained by sufficient evidence, and was contrary to law; third, error of law occurring at the trial and excepted to by the defendant, in this, that the court erred in giving to the jury the instructions asked by the plaintiff, and in refusing to give the instructions asked by the defendant; and, further, that the court erred in excluding evidence offered by the defendant, and in admitting evidence in behalf of the plaintiff over defendant's objection.

There are six errors assigned, all of which are covered by

the second, that the court erred in refusing to grant the motion for a new trial.

The appellant asked the court to give the following instruction: " To entitle the plaintiff to exemplary or punitive damages, in this case, the jury must be satisfied that the injury resulted from negligence, and not from accident. If the jury believe from the evidence that the injury was the result of simple accident, without wilful negligence, the measure of plaintiff's damages would be his actual loss and expense resulting from the injury inflicted by defendant; and in considering this matter, you will allow the plaintiff nothing for any injury or ailment that may have resulted from bad treatment by a physician, or from the want of proper attendance on the part of the plaintiff himself;" which was refused.

The instruction must be considered as an entirety. It does not undertake to exclude punitive damages only; but it asks to limit them to the "actual loss and expense resulting from the injury," to exclude all damages arising from pain and suffering. We think in cases of this kind the injured party may be entitled to some damage on account of the pain and anguish suffered in consequence of the injury sustained. What such damage ought to be is for the jury to determine from the evidence, under proper instructions from the court. We do not understand that the jury possess an unlimited discretion to allow excessive and extravagant damages, but only such as are reasonable and proper, and as will fairly compensate the party suffering. They must be governed as in other cases where the damages are not liquidated and cannot be determined by calculation. No exact or precise rule can be laid down, to be followed in all cases, for fixing the amount. The facts in each case will enable the jury, under proper instructions, to determine them.

The instruction also directed the jury not to allow the plaintiff anything for any injury or ailment that may have resulted, not only from bad treatment of the wounds by a physician, but also from the want of proper attendance on

The Indianapolis, Bloomington, and Western Railway Company *v.* Beaver.

the part of the plaintiff himself, although the court had already instructed the jury, that "the defendant was not liable for any damages resulting to plaintiff from his own want of proper care and treatment of the wound." On motion of the appellant the jury were also instructed that the defendant would not be liable for any aggravation of the plaintiff's injury that may have resulted from improper treatment on the part of the surgeon who dressed it, or from want of proper care and attention on the part of the plaintiff himself after the wound was dressed; that he could not recover from the railroad company for any injury that might have resulted from his own want of care, skill, and attention to his injury; that the plaintiff must prove to the satisfaction of the jury, by a preponderance of the evidence, that the diseased condition of the limb arising subsequent to the injury was the natural result of the original injury, and not the result of improper treatment and a want of due care on the part of the plaintiff himself, or on the part of the physician who dressed the wound. The instructions which the court had given to the jury contemplated and recognized compensatory, and not punitive, damages, as the rule by which they were to be governed.

The appellant discusses at considerable length the instructions given to the jury relative to the obligations of the company in carrying the appellee as a passenger, and the safeguards that were necessary to be used for his protection from injury; and an effort is made to distinguish and limit the obligation and care of the company when the passenger is carried in a caboose car attached to a freight train in which passengers are not regularly carried. It is insisted that the same care is not required as when the passenger is carried in a passenger car and passenger train. We will not stop to discuss that question in this case. The proof is conclusive that in the car and train in which the appellee was travelling at the time of the injury, passengers were carried, the same as on regular passenger cars and trains; that they were

allowed to travel without objection, and that regular fare was collected from them. And it is just as conclusively established by the evidence, that the car in which the plaintiff was riding, by the consent and direction of the proper agents of the appellant, was thrown from the track and overturned through the carelessness of the company, whereby the appellee received the injury complained of, without fault on his part. Under such circumstances, we think it unnecessary to discuss or consider the comparative care required in carrying passengers on freight and passenger trains.

The appellee had contracted for the transportation of stock and furniture to a point on the line and on a portion of the road of the appellee. He was travelling with, and in charge of, his property.

Before starting from Indianapolis, he told the agent of the company that he wanted to go with his stock; the assistant superintendent directed the agent to enter on the appellee's way-bill, "a man in charge." With that authority he rode in the caboose car attached to the train in which his stock was being transported. We think he was a passenger and entitled to all the rights and remedies belonging or incident to passengers. He could not expect the same comforts that he would enjoy in a passenger car, and perhaps not all the appliances used for the safety of passengers on passenger trains. But whether a railroad company undertakes to convey its passengers on a freight or passenger train, in a caboose or well cushioned car, its duty is to so run and manage the train that passengers shall not by its own carelessness be killed or injured.

The charge complained of is as follows: "While railroads are not bound to assure the absolute safety of their passengers, they are required to make use of such safeguards for the protection of their passengers as science and art have devised, and such as experience has proved to be efficacious in the accomplishing of their object. It is not sufficient that they exercise slight or common care; they have discharged their duty only when they have employed all the means

reasonably in their power to prevent accidents." The appellant insists that the charge is not applicable to a case where the passenger is riding in a caboose. He says, the passenger "takes the caboose as he finds it, and must put up with all its deficiences and inconveniences and want of safeguards; that he must take all the risks incident to the mode of travel and the character of the means of conveyance that he selects, the parties furnishing the conveyance being only required to adopt the proper care, vigilance, and skill to that particular means;   *   *   *   that the passenger can only expect such security as the mode of conveyance affords."

When properly understood and applied to the evidence in this case, we do not think the instruction at all in conflict with the position assumed by the appellant. The company were carrying passengers on the train and in the caboose in which the appellee was riding. It was to some extent a passenger train. It was one upon which they carried for hire all who chose to ride. They were bound to use such safeguards for the protection of their passengers as science and art had devised, and such as experience had proved to be efficacious in accomplishing their object on such a train. Nor was slight care sufficient. They were bound to employ all the means reasonably in their power to prevent accidents and protect their passengers.

In the case at bar, the accident did not happen by reason of any defect in the machinery, cars, or locomotive. In backing the train, the caboose was thrown from the track, and turned over on its side, and the appellee received the injury complained of. The jury, to an interrogatory, "what neglect, if any, were the defendants guilty of, that produced the injury complained of by the plaintiff?" answered, "neglect to throw off the brake on the caboose when the train was backed." The appellant did not adopt the proper care, vigilance, and skill to the means of conveyance used. We are referred to *The Chicago, etc., R. R. Co.* v. *Hazzard*, 26 Ill. 373. The court, in that case, on page 381, said: "The

employees are held to as strict accountability in the management of a train with a caboose attached, as the law imposes in the transportation of passengers in cars specially provided for such purpose."

The appellant also contends that the eighth instruction was erroneous, tending to mislead the jury. It is as follows: "Public policy demands that the law should be applied as rigidly to railroad companies as to any other species of common carriers." We are at a loss to see how it could mislead the jury. It states the law, and whilst, perhaps, there would have been no error in refusing to give the instruction on the ground that it was a mere abstract proposition, still, we think, it could do no harm.

The appellant also complains of the ninth instruction, that the plaintiff was not bound to prove more than enough to raise a presumption of negligence on the part of the defendant and of resulting injury to himself; but on motion of the appellant, the court gave a further instruction, that it was incumbent "on the plaintiff to show to the satisfaction of the jury, by a preponderance of the evidence, some carelessness or neglect on the part of the railroad company, which resulted in the injury of the plaintiff's leg; that if the injury was the result of an accident which ordinary prudence could not have prevented, the defendant was not liable to the plaintiff for anything, and that the verdict of the jury should be for the defendant." We do not think the court committed any error in giving the instruction. If it did, it was fully corrected by the one given at the instance of the appellant. In that, the jury were told that the railroad company was only bound to exercise ordinary prudence to prevent the injury. And they were still further instructed, on motion of the appellant, that if they believed, from the evidence, that the defendant was not guilty of negligence, the plaintiff could not recover; "that negligence consisted in not doing those things which a reasonable man in managing his own property would have done, under the circumstances shown in the evidence, or in doing those things which a reasonable

The appellee was permitted to testify, over the objection of the appellant, that he was a farmer, and had a wife and children, and was farming about forty acres of ground; and it is claimed that the judgment should be reversed on account of the admission of such evidence. An objection was made to the introduction of the evidence as to the quantity of land the appellee was farming, on the ground that it was immaterial and foreign to the issue in the case. The objection urged in this court is, that the evidence tended to excite feelings of commiseration and sympathy for the appellee in the hearts of the jury. We do not so understand it. It might have been offered legitimately for the purpose of showing the calling of the appellee and the extent of his engagements, and we will presume that it was offered for that purpose. The jury was properly instructed on the subject of damages, and under the instructions the evidence objected to could not have misled them on that subject; and besides, under the uniform rulings of this court, the cause assigned for a new trial was too general to raise the question. It was, that the court erred in admitting evidence in behalf of the plaintiff over the defendant's objection. What the evidence was is not stated, nor is the name of the witness given. There is nothing in the cause stated calling the attention of the court to the evidence received.

We have examined the evidence, and are of the opinion that it sustains the verdict, and that the damages are not excessive.

The judgment of the said Montgomery Court of Common Pleas is affirmed, with costs and seven per cent. damages.

*C. Black, P. S. Kennedy,* and *W. T. Brush,* for appellant.
*J. M. Cowan* and *T. Patterson,* for appellee.