THE OHIO AND MISSISSIPPI RAILWAY COMPANY v. SELBY.

NEGLIGENCE.—*Pleading.*—*Injury to Person.*—*Railroad.*—In an action for damages for injury to the person, the complaint averred, that the defendant, a railroad company, did not use due care, diligence, and skill in carrying the plaintiff; but, on the contrary, the track of the railroad was in bad condition and repair, and the defendant by its servants, etc., negligently, unskilfully, and carelessly, ran its train of cars, whereby, etc.

*Held*, on demurrer, that the averment of the condition of the track was not too general.

*Held*, also, that if defendant desired a more particular description of the condition of the track, a motion to make the averment more specific should have been made.

*Held*, also, that in such an action, an act, the doing of which is complained of, and that such act was negligently done, must be alleged; and that the above averment of the condition of the track and the manner in which the train was run sufficiently stated an act, and that it was negligently done.

*Held*, also, that when the act complained of is sufficiently stated, it is only necessary to aver that such act was negligently done, without setting out in detail the particulars of the negligence.

SAME.—*Common Carrier.*—*Contract.*—A common carrier cannot by contract exempt itself from liability for loss resulting from any negligence on its part. *Wright* v. *Gaff*, 6 Ind. 416; *The I. & C. R. R. Co.* v. *Remmy*, 13 Ind. 518; *The Ind. Central R. W. Co.* v. *Mundy*, 21 Ind. 48; and *Thayer* v. *The St. Louis, etc., R. R. Co.*, 22 Ind. 26, overruled.

SAME.—*Stock Drover.*—*Stock Pass.*—*Free Pass.*—A drover travelling on a freight train for the purpose of taking care of his stock on the train, for which stock he paid freight, received from the railroad company a ticket called a "stock pass," with an indorsement signed by him, as follows: "In consideration of receiving this ticket, I voluntarily assume all risk of accidents, and expressly agree that the company shall not be liable under any circumstances, whether by negligence of their agents, or otherwise, for any injury to my person, or for any loss or injury to my property; and I agree that as for me, in the use of this ticket, I will not consider the company as common carriers, or liable to me as such."

*Held*, in an action for damages for injury to the person of the drover, caused by the negligent act of the railroad company, that the agreement aforesaid was invalid as a defence to said action.

*Held*, also, that such stock drover so travelling with said pass was a passenger for hire, and was not a gratuitous passenger.

SAME.—*Duty of Carrier of Passenger on Freight Car.*—Where a railroad company undertakes to convey a stock drover as a passenger on a freight car, its duty is to so run and manage the train that he shall not, by its own carelessness, be injured.

| | |
|---|---|
| 47 | 471 |
| 126 | 130 |
| 47 | 471 |
| 132 | 141 |
| 47 | 471 |
| 134 | 396 |
| 134 | 412 |
| 136 | 194 |
| 47 | 471 |
| 143 | 656 |
| 47 | 471 |
| 146 | 608 |
| 47 | 471 |
| 152 | 335 |
| 47 | 471 |
| 157 | 309 |
| 157 | 312 |
| 157 | 617 |
| 47 | 471 |
| 163 | 635 |
| 47 | 471 |
| 165 | 706 |

The Ohio, etc., R. W. Co. *v.* Selby.

SAME.—*Free Pass.*—*Liability of Carrier to Passenger Travelling On.*—It is well settled, that in the case of a person riding on a free pass, common carriers of passengers are held to the same liability for injuries to the person by the negligent act of the carrier as in the case of a passenger paying fare.

PRACTICE.—*Pleading.*—*General and Special Answers.*—Where a general denial is filed, a specific denial of the averments of the complaint may be struck out on motion.

EVIDENCE.—*Speed of Train.*—*Condition of Track.*—Evidence is admissible of the rate of speed at which a train was run at the time of the accident, by comparison with the speed of trains at other times; as is, also, evidence of the condition of the track at the time of the accident, by comparison with its condition at other times.

SAME.—In an action for damages for injury to the person of a drover travelling on a stock pass, by the negligent act of a railroad company, evidence that the plaintiff had continued since the injury to make contracts for the shipment of stock, and to ride on stock passes in the same manner as at the time of the injury, is inadmissible.

SAME.—*Burden of Proof.*—*Injury to Person.*—In such action, the burden of proof is upon the plaintiff to establish, by a preponderance of evidence, the material allegations of the complaint.

SAME.—*Speed of Train.*—The true criterion for determining whether at the time of an accident a train was running at a higher rate of speed than was safe and prudent, taking into consideration the portion of the track where the accident occurred, is the rate of speed at which other trains have been run over that portion of the road, both before and after the accident.

PLEADING.—*Amendment.*—*Injury to Person.*—*Specific Averments of.*—*Evidence.*—*Continuance.*—*Measure of Damages.*—*Implication of Law.*—The complaint in an action for damages for injury to the person charged, that by the negligent act of defendant he was grievously bruised, hurt, and injured, etc., and that his collar-bone was broken, and shoulder dislocated.

*Held*, that under said general allegations of injury, the plaintiff was entitled to prove any and all injuries which he received, and which were the natural consequence of the wrongful act of the defendant; and that, on the trial, it was not error for the court to allow the plaintiff to insert in the complaint another specific allegation that his shoulder-blade was broken, and to refuse the defendant a continuance of the cause, upon affidavit made, on the ground of surprise occasioned by such amendment.

*Held*, also, that the said specific averments of injury did not limit and restrict the proof of plaintiff to them.

*Held*, also, where the law does not imply the damage as the natural and necessary consequence of the wrongful act, the special damage should be set out with particularity.

PRACTICE.—*New Trial.*—*Verdict.*—*Special Findings.*—Where there are a general verdict and special findings, and the correctness of the general verdict is not questioned, a case will not be reversed on the evidence, when it is conflicting, to support the special findings.

The Ohio, etc., R. W. Co. *v.* Selby.

From the Orange Circuit Court.

*T. Gazlay* and *W. H. DeWolf,* for appellant.

*G. Putnam, G. W. Friedley,* and *H. C. Duncan,* for appellee.

BUSKIRK, C. J.—This action was brought by the appellee, George W. Selby, against the Ohio and Mississippi Railway Company, to recover damages for personal injuries received while riding on one of appellant's freight trains, accompanying a car load of live-stock.

The case was tried by a jury, resulting in a general verdict and judgment for the appellee, and an appeal to this court. The transcript of the record contains all of the evidence given in the cause.

The complaint contains two paragraphs. The first paragraph states, in substance, that appellant, for a certain reward, agreed to convey from Tunnelton to Cincinnati a car load of hogs, the property of appellee, together with the plaintiff himself, etc.; that the appellant did not use due care, skill, etc., but on the contrary, the track of said railway was in bad condition and repair, and the defendant, by its servants and employees, negligently, unskilfully, and carelessly conducted and ran said train, whereby the caboose, upon which plaintiff was a passenger, was thrown from the track, and plaintiff injured, etc.

The second paragraph of the complaint is similar to the first, except in regard to the statement of the contract for carrying appellee and his car load of hogs, which, in substance, recites that appellant agreed for a certain reward, to be paid by appellee, to carry, etc., a car load of hogs, the property of appellee, and in consideration of such hire and reward, etc., the said appellant allowed the said appellee to have his passage on said train free, etc.

On the trial, appellee amended his complaint by inserting the words " and shoulder-blade was broken," in describing his injuries.

The appellant demurred separately to each paragraph of

the complaint, but the demurrers were overruled, and exceptions taken.

The appellant answered in six paragraphs, which were in substance as follows :

The first paragraph of answer is a general denial. The second sets up, in substance, that the contract between the parties, under which the appellee and his car load of hogs were being carried, was in writing, and that the appellee was being carried free, he having agreed to assume all risks of personal injuries, and appellant not to be considered a common carrier, etc., which contracts, made a part of said answer, are as follows :

"G. F. O. 66.

"This agreement, made this 30th day of November, A. D. 1872, between the 'Ohio and Mississippi Railway Company,' party of the first part, and George W. Selby, party of the second part, witnesseth : that the party of the first part will forward for the party of the second part the following freight, to wit : One car load of hogs, from Tunnelton to Cincinnati, at the rate of thirty-two dollars per car, which is a reduced rate, made expressly in consideration of this agreement ; in consideration of which the party of the second part agrees to take care of said freight while on the trip, and load and unload the same at his or their own risk and expense, and that the party of the first part, and connecting lines over which such freight may pass, shall not be responsible for any loss, damage, or injury which may happen to said freight in loading, forwarding, or unloading, by suffocation or other injury caused by overloading the cars, by escapes, from any cause whatever, by any accident in operating the road or delay caused by storm, fire, failure of machinery or cars, or obstruction of track from any cause, or by fire from any cause whatever, or by any other cause except gross negligence ; and that said party of the first part and such connecting lines shall be deemed merely forwarders, and not common carriers, and only liable for such loss, damage,

injury, or destruction of such freight as may be caused by gross negligence only, and not otherwise.

"Witness our hands and seals, in duplicate.

> ```
> FIVE CENT
> REVENUE
> STAMP
> HERE.
> ```

OHIO AND MISSISSIPPI RAILWAY Co. [Seal.]

By S. McMAHAN, Agent.

GEO. W. SELBY. [Seal.]

"Two copies of this contract will be signed by both the agent of the company and the owner or shipper, one copy to be retained by each party. The agent will file away carefully the copy retained by himself, and will note on the way-bills 'Released.' Agents will use care to fix the proper government stamp on this contract.

| | OHIO AND MISSISSIPPI RAILWAY CO. |
|---|---|
| Not good unless endorsed by S. McMAHAN, Agent. | STOCK PASS No.——. |
| | Conductors will pass Mr. GEO. W. SELBY from TUNNELTON to CINCINNATI. |
| | No. CARS, 1. |
| | ISSUED. |
| | A. N. CHRYSTIE, |
| | Nov. 30th, 1872.                 Vice-President. |
| | GOOD ONLY ON STOCK TRAINS. |
| | (In red ink across face.) |

"Countersigned by S. McMAHAN, Agent.

"In consideration of receiving this ticket, I voluntarily assume all risk of accidents, and expressly agree that the company shall not be liable, under any circumstances, whether by negligence of their agents or otherwise, for any injury to my person, or for any loss or injury to my property; and I agree, that as for me, in the use of this ticket, I will not consider the company as common carriers, or liable to me as such.               GEO. W. SELBY."

Appellant, in said answer, denied all charges of negligence, etc.

The third paragraph of answer sets up that appellee, at the time he was injured, was riding on a free pass, without paying any fare, and that the railway track of appellant was in good order and condition, the train well manned and skilfully managed; and that the injury to appellee was the

result of an accident, and was not caused by any negligence or fault of appellant or her servants.

Paragraph four of the answer states, in substance, that appellee, at the time, was riding on a free pass, under a contract (hereinbefore set out), and while so riding was injured, etc.

The fifth paragraph of answer states, in substance, that at the time appellee sustained the injuries complained of, appellant's road-bed, track, train, cars, and engine were in good order and condition in all respects, and the train upon which appellee ‚was riding was carefully, prudently, and skilfully managed, and that the accident by which appellee was injured, was caused by the breaking of a rail, which no care, skill, prudence, or foresight could prevent, etc.

Demurrers were filed to the second, third, and fourth paragraphs of answer, which were sustained by the court; the fifth paragraph of answer was struck out by.the court on motion (appellant objecting and excepting), and the cause left for trial under the general denial.

The court submitted to the jury, at the request of appellant, interrogatories for special findings of facts, which were returned answered by the jury with their general verdict.

The interrogatories and answers were as follows:

" 1st. Where did the accident occur by which plaintiff claims to have been injured?

" Ans. About three and a half miles east of Seymour, near Mutton Creek bridge, or trestle, in Jackson county, Indiana, on the Ohio and Mississippi Railroad.

" 2d. What was it that caused the car upon which plaintiff was riding, at the time of the injury complained of, to be thrown from the track of said railway?

" Ans. By improper management of the train, and a broken rail.

" 3d. What act or acts of carelessness, negligence, or unskilfulness (if any), on the part of said defendant or its agents, contributed to the injury complained of by plaintiff?

" Ans. By carelessness of the engineer, not having his

engine in good repair. We think that on the account of the valves being out of order the train was unmanageable, and he should have whistled ' down brakes,' and by running the train so fast it ran off the track.

" 4th. What agent or employee of said defendant committed any act of negligence or unskilfulness, or omitted to perform any duty that caused the alleged injury to plaintiff?

" Ans. The engineer and conductor.

" 5th. At what time and place did any act of negligence or misconduct of defendant or her agents occur, that caused the alleged injury to plaintiff to take place ?

" Ans. At Seymour, and between there and place of accident, on the 30th day of November, 1872.

"6th. Was said railway track, at the place of the said accident, in good order and repair ? If .you find said track was in bad order or repair, state in what way and manner said track was in bad order and repair.

" Ans. We find that said track was too low, and said rails were not spliced—spliced on a cross-tie.

" 7th. Was the train upon which plaintiff was riding at the time of the alleged injury well manned, well and skilfully managed, and in good order and condition ? and if not, state in what particular said train was not well manned, and well and skilfully managed, and in good order and condition.

" Ans. We find it well manned, as to number of men, but not skilfully managed ; we find that the engine was not in good order, from the reason that the valves were out of order, so that the engineer could not control the engine down the grade when the accident occurred.

" Isaac H. Lewis, Foreman."

The appellant, in proper order, moved for a *venire de novo*, for a judgment on the special findings, for a new trial, and in arrest of judgment ; all of which motions were overruled by the court, and excepted to in due order, and judgment was rendered for appellee.

The reasons assigned for a new trial were as follows :

1. The court erred in overruling the demurrer to the complaint.

3. The court erred in sustaining the demurrers to the second, third, and fourth paragraphs of the answer.

3. The court erred on the trial in refusing to admit in evidence the contract for forwarding hogs by the cars of defendant, and also in refusing in evidence the pass and contract upon which the plaintiff was riding on defendant's road at the time of the injury complained of.

4. The court erred in admitting evidence of the speed with which trains were run on defendant's road before and after the accident.

5. The court erred in admitting in evidence that the track of said road was not in good order near the place of the injury after it took place.

6. The court erred in excluding evidence of the fact that plaintiff had continued since the injury to make contracts for the shipment of stock, and to ride on defendant's train under stock passes, and contract with her in the same manner as before and at the time of the injury.

7. The answers of the jury to the interrogatories, each and every one of them, are wholly unsupported by the evidence.

8. The court erred in refusing to give in charge to the jury instructions numbers two, three, four, five, eight, and fourteen, as asked by defendant.

9. The court erred in giving in charge to the jury, on its own motion, instructions numbers four, seven, thirteen, and fourteen.

10. The court erred in refusing to continue the cause on application of defendant, for surprise caused by amendment of complaint after the trial had commenced.

The following assignments of error have been made:

1. The court erred in overruling the demurrer to the complaint.

2. The court erred in sustaining the demurrers to the second, third, and fourth paragraphs of the answer.

3. The court erred in sustaining the motion to strike out the fifth paragraph of the answer.

4. The court erred in overruling the motion for a *venire de novo*.

5. The court erred in overruling the motion for judgment on the special findings, notwithstanding the general verdict.

6. The court erred in overruling the motion in arrest of judgment.

7. The court erred in overruling the motion for a new trial.

The only objection urged to the complaint is, that the negligence of the appellant is not sufficiently charged. The averment in the first paragraph is: "That the defendant did not use due care, and diligence, and skill, in carrying the plaintiff as aforesaid; but on the contrary, the track of the said railway was in bad condition and repair, and the defendant by its servants and employees negligently, unskilfully, and carelessly conducted and run said train of cars, whereby," etc.

The second paragraph was, in substance, the same as the first.

It is insisted, that under the averment in the first paragraph, proof was admissible that the road was in bad condition and repair, miles from the place of the accident. We do not think so. The averment was, that the track was in bad condition and repair. Under this general allegation, evidence was admissible that it was in bad condition and repair at the place where the accident occurred. Evidence that the entire track was in bad condition and repair would have included the place where the accident occurred. The complaint was good on demurrer. The appellant should have moved the court to require the appellee to make the complaint more specific, if it so desired.

We think the averments of negligence were sufficient.

In the case of *The I., P. & C. R. R. Co.* v. *Keeley's Adm'r*, 23 Ind. 133, it was held, that the averment that " the defendant,

by her agent and servants, did carelessly and negligently run over," etc., was sufficient. But this averment is not nearly so broad as the allegations in the case at bar, for the acts of negligence in the former case are confined to the time of the injury complained of.

In the case of *The J., M. & I. R. R. Co.* v. *Dunlap,* 29 Ind. 426, a similar point was raised in a paragraph of answer (p. 429). The averment in that case was, that the horse " was killed by and on account of the gross negligence of said plaintiff, and without any fault or negligence of said defendant, its servants or employees." This the court held to be too general, and remarked, that while the rules of pleading dispensed with the necessity of a prolix statement of the particulars constituting negligence, they do require that the act which was characterized by negligence should be stated.

The ruling in the above case was based upon the ground that the act complained of was not stated. The court say : " What did the plaintiff in this case do, with gross negligence ? Or what act did he so omit ? The fact that the horse starved to death because he did not feed him, or perished in a swamp into which the plaintiff had driven him, or died because of reckless driving, or any other of the thousand modes by which gross carelessness may destroy an animal's life, without the intervention of any railroad, might be proved to sustain this paragraph of the answer, quite as well as that the horse was blind and had been willingly exposed to collision with railroad trains, passing every hour, as in the case of *Knight* v. *The T. & W. R. W. Co.,* already cited."

The negligent act complained of in the case of *The I., P. & C. R. R. Co.* v. *Keeley's Adm'r, supra,* was the "running over of deceased with the locomotive." The negligence complained of in the present case related to the condition of the track, and the manner in which the train was run and managed. But in the case in 29 Ind., *supra,* no act was stated to which the negligence averred to exist could be applied. When the act complained of is sufficiently stated, it is sufficient to aver

The Ohio, etc., R. W. Co. *v.* Selby.

that the act was negligently done, without setting out in detail the particulars of the negligence.

In *Edgerton* v. *The New York and Harlem R. R. Co.*, 35 Barb. 389, it was held, in an action against carriers of passengers, to recover damages for a personal injury, that an allegation in the complaint that the occurrence happened, and the injuries of the plaintiff were received by the plaintiff, through the negligence and want of care of the defendants, and not through any want of care, or neglect, or default on his part, is sufficient to include any negligence; and the adding of other allegations which are mere surplusage will not have the effect of excluding the facts from the consideration of the jury or court.

In *Nolton* v. *Western R. R. Corp.*, 15 N. Y. 444, the complaint states a bodily injury received by the plaintiff, by running of the car containing the plaintiff off the track and breaking it, through defectiveness of machinery, want of care, skill, etc. The court held the averments sufficient, and said: " Degrees of negligence are matters of proof, and not of averment. The allegations of negligence in this complaint are sufficient, whether the defendant is liable for ordinary or only for gross negligence."

In *McCauley* v. *Davidson*, 10 Minn. 418, it was held, that negligence is a question of fact, or mixed fact and law, and in pleading it is only necessary to aver negligence generally, not the specific facts constituting negligence. See 2 Redfield Railways, 601 ; *Ware* v. *Gay*, 11 Pick. 106; 2 Chit. Pl. 334, 343 ; 2 Chit. Pl. 653, and note *d;* 2 Greenl. Ev., sec. 210, and note ; Estee Pl. & Pr.

There was no error in overruling the demurrer to the complaint.

We next inquire whether the court erred in sustaining demurrers to the second, third, and fourth paragraphs of the answer. As each of these paragraphs presents different questions, we will consider them separately.

The question presented by the second paragraph of the

answer is, whether the contract hereinbefore set out was suffi-cient to relieve the appellant from liability for the injury complained of. The appellant insists, that by the terms of such contract she is exempted from responsibility for all acci-dents, including those occurring from negligence, at least the ordinary negligence of its servants. Is such a contract valid? This involves an inquiry into the law affecting the right of a railway company to exempt itself by special con-tract from the liability which ordinarily attaches to it as a common carrier of persons and property. There seems to be an irreconcilable conflict in the adjudged cases in England and in this country. We propose, therefore, to make a brief review of the leading cases, and classify them, so that it may be seen which sustain, and which oppose, the validity of the contract relied upon by appellant. And we will, in the first place, examine the adjudged cases in this court.

In *Wright* v. *Gaff*, 6 Ind. 416, it was held, that a steam-boat might, by special contract, be exempted from liability for injury resulting from ordinary negligence, but not for gross negligence.

The ruling in the last case cited was referred to with approval, in the case of *The Indianapolis, etc., R. R. Co.* v. *Remmy*, 13 Ind. 518.

In the case of *The Indiana Central R. W. Co.* v. *Mundy*, 21 Ind. 48, Mundy was riding on a free pass, with conditions on the back, assuming all risks of personal injury, similar to the pass in the case at bar. The court in that case decided that Mundy did not assume any risks arising from acts of gross negligence, but approved the charge of the court below, " that the railway company would not be liable except for wilfully gross negligence," etc.; and in a note to that case, authorities are cited to sustain that ruling.

The ruling in the above case was adhered to in the case of *Thayer* v. *The St. Louis, etc., R. R. Co.,* 22 Ind. 26.

The case of *The Michigan Southern and Northern Indiana R. R. Co.* v. *Heaton* was decided by the late judges of this court at the May term, 1869. A rehearing was granted, not,

however, upon the point under examination. In the case of *The I., P. & C. R. R. Co.* v. *Allen*, 31 Ind. 394, decided at the same term as the above case, the following reference is made to the ruling in such case:

"It is true, that the language of the contract is broad enough to cover loss from any cause whatever; but in *The Michigan Southern and Northern Indiana R. R. Co.* v. *Heaton*, at this term, after a careful examination of the subject, this court came to the conclusion, that a contract as broad in its terms as the one under consideration did not cover liability for loss occasioned by ordinary negligence. Indeed, it is held in that case, that a common carrier can not contract against liability for loss from his own ordinary negligence; that such a condition is void as against public policy." The opinion of the court in that case is published in a note commencing on page 397.

Such case having been re-submitted and re-argued came before the court as at present constituted, and will be found reported in 37 Ind. 448. Upon the last hearing, it was held that "a common carrier can not by contract relieve himself from liability for the loss of goods delivered to him for transportation, which has been occasioned by his own negligence, or that of his agents or servants, or where such negligence has in any degree contributed to such loss. A common carrier can no more stipulate for a slight degree of negligence than he can for gross negligence."

In the subsequent case of *The Adams Express Co.* v. *Fendrick*, 38 Ind. 150, the opinion of the court was delivered by the same judge who wrote the opinion in the case last cited. He says:

"The only question we need to consider is that presented by the ruling on the demurrer to the first paragraph of the answer. It will be seen that the loss is alleged to have occurred from one of the dangers of 'river navigation,' for which it was stipulated that the company should not be liable.

"Doubtless, at common law, and independently of any con-

tract to the contrary, the defendant, as a common carrier, would have been liable for the loss; a common carrier being regarded as an insurer against all casualties in the transportation of goods, except those arising from the act of God or the public enemy. But the great current of authorities has established the proposition, that a common carrier may, by contract, limit the extreme liability which the law thus throws upon him. In the case of *The Michigan, etc., R. R. Co.* v. *Heaton*, 37 Ind. 448, this court held that a common carrier might, by contract, exclude himself from liability for a loss not arising from, or being contributed to by, any degree of negligence on the part of the carrier, his servants or agents."

In many of the cases a distinction has been drawn between the degrees of negligence. In some it was held that a common carrier might contract against slight negligence, in others against ordinary negligence, and in a few against gross negligence. But the very decided tendency of modern decisions is to disregard this distinction.

The Supreme Court of the United States, in the case of *Railroad Company* v. *Lockwood*, 17 Wal. 357, uses the following language in reference to the degrees of negligence:

"The defendants endeavor to make a distinction between gross and ordinary negligence, and insist that the judge ought to have charged that the contract was at least effective for excusing the latter.

"We have already adverted to the tendency of judicial opinion adverse to the distinction between gross and ordinary negligence. Strictly speaking, these expressions are indicative rather of the degree of care and diligence which is due from a party and which he fails to perform, than of the amount of inattention, carelessness, or stupidity which he exhibits. If very little care is due from him, and he fails to bestow that little, it is called gross negligence. If very great care is due, and he fails to come up to the mark required, it is called slight negligence. And if ordinary care

is due, such as a prudent man would exercise in his own affairs, failure to bestow that amount of care is called ordinary negligence. In each case, the negligence, whatever epithet we give it, is failure to bestow the care and skill which the situation demands; and hence it is more strictly accurate perhaps to call it simply 'negligence.' And this seems to be the tendency of modern authorities. 1 Smith's Lead. Cas. 453, 6 Am. ed.; Story Bail., sec. 571; *Wyld* v. *Pickford,* 8 M. & W. 460; *Hinton* v. *Dibbin,* 2 Q. B. 661; *Wilson* v. *Brett,* 11 M. & W. 115; *Beal* v. *South Devon R. R. Co.,* 3 H. & C. 337; Law R. 1 C. P. 600; 14 How. 486; 16 How. 474. If they mean more than this, and seek to abolish the distinction of degrees of care, skill, and diligence required in the performance of various duties and the fulfilment of various contracts, we think they go too far; since the requirements of different degrees of care in different situations is too firmly settled and fixed in the law to be ignored or changed."

We do not mean to say that in no case does the distinction in the degrees of negligence exist. Such a distinction may exist in cases involving a question of contributory negligence. We are now considering the degree of negligence that may be contracted against, and beyond that we decide nothing.

We shall not attempt a review of the cases sustaining, or in conflict with, the recent decisions of this court, but will cite such cases.

The following cases hold that a common carrier may be exempted from liability for a loss occasioned by ordinary negligence: *Wells* v. *The N. Y. C. R. R. Co.,* 26 Barb. 641; S. C., 24 N. Y. 181; *Perkins* v. *The N. Y. C. R. R. Co.,* 24 N. Y. 196; *Smith* v. *The N. Y. C. R. R. Co.,* 29 Barb. 132; S. C., 24 N. Y. 222; *Bissell* v. *The N. Y. C. R. R. Co.,* 29 Barb. 602; S. C., 25 N. Y. 442; *Poucher* v. *The N. Y. C. R. R. Co.,* 49 N. Y. 263; *Ashmore* v. *Pennsylvania, etc., Co.,* 4 Dutcher, 180; *Kinney* v. *Central R. R. Co.,* 3 Vroom, 407; *Hale* v. *The N. J., etc., Co.,* 15 Conn. 539; *Peck* v. *Weeks,* 34 Conn. 145; *Lawrence* v. *The N. Y., etc., R. R. Co.,* 36 Conn.

63; *Kimball* v. *Rutland, etc., R. R. Co.,* 26 Vt. 247; *Mann* v. *Birchard,* 40 Vt. 326; *Adams Ex. Co.* v. *Haynes,* 42 Ill. 89; 42 Ill. 458; *The Ill. C. R. R. Co.* v. *Adams,* 42 Ill. 474; *Hawkins* v. *Great Western R. R. Co.,* 17 Mich. 57; S. C., 18 Mich. 427; *Balt. & O. R. R. Co.* v. *Brady,* 32 Md. 328; *Levering* v. *Union, etc., Co.,* 42 Mo. 88.

Many of the above cases were decided by divided courts. Some of them limit the exemption to cases of slight negligence, some of them to ordinary negligence, and a few of them extend the doctrine to cases of gross negligence.

We now proceed to cite cases holding the opposite doctrine and fully sustaining the recent decisions in this court. *Cole* v. *Goodwin,* 19 Wend. 251; *Gould* v. *Hill,* 2 Hill N. Y. 623; *Dorr* v. *The N. Y. St. Nav. Co.,* 4 Sandf. 136; *Stoddard* v. *The Long Island R. R. Co.,* 5 Sandf. 180; *Parsons* v. *Monteath,* 13 Barb. 353; *Moore* v. *Evans,* 14 Barb. 524; *Laing* v. *Colder,* 8 Pa. St. 479; *Camden and Amboy R. R. Co.* v. *Baldauf,* 16 Penn. St. 67; *Goldey* v. *The Penn. R. R. Co.,* 30 Penn. St. 242; *Powell* v. *The Penn. R. R. Co.,* 32 Penn. St. 414; *The Penn. R. R. Co.* v. *Henderson,* 51 Penn. St. 315; *Farnham* v. *The Camden, etc., R. R. Co.,* 55 Penn. St. 53; *Amer. Express Co.* v. *Sands,* 55 Penn. St. 140; *The Empire Trans. Co.* v. *Wamsutta Oil Co.,* 63 Penn. St. 14; *Jones* v. *Voorhees,* 10 Ohio, 145; *Davidson* v. *Graham,* 2 Ohio St. 131; *Graham* v. *Davis,* 4 Ohio St. 362; *Wilson* v. *Hamilton,* 4 Ohio St. 722; *Welsh* v. *The Pittsburg, etc., R. R. Co.,* 10 Ohio St. 65; *The Cleveland, etc., R. R. Co.* v. *Curran,* 19 Ohio St. 1; *The Cincinnati, etc., R. R. Co.* v. *Pontius,* 19 Ohio St. 221; *Knowlton* v. *The Erie R. W. Co.,* 19 Ohio St. 260; *Fillebrown* v. *The Grand Trunk R. W. Co.,* 55 Me. 462; *Sager* v. *Portsmouth, etc., R. R. Co.,* 31 Me. 228, 238; *School District, etc.,* v. *Boston, etc., R. R. Co.,* 102 Mass. 552; *Flinn* v. *The Phil., Wil. & Balt. R. R. Co.,* 1 Hous. Del. 469; *Orndorff* v. *Adams Express Co.,* 3 Bush (Ky.), 194; *Swindler* v. *Hilliard,* 2 Rich. (S. C.) 286; *Berry* v. *Cooper,* 28 Ga. 543; *Steele* v. *Townsend,* 37 Ala. 247; *Southern Ex. Co.* v. *Crook,* 44 Ala. 468; *Whitesides* v. *Thurlkill,* 12 Sm. &

M. 599; *The Southern Ex. Co.* v. *Moon,* 39 Miss. 822; *The N. O. Mut. Ins. Co.* v. *The N. O., etc., R. R. Co.,* 20 La. An. 302.

The ruling of the Supreme Court of the United States has been uniformly against the validity of all contracts to exempt a common carrier from liability for loss resulting from any negligence. The following are leading cases: *The New Jersey St. Nav. Co.* v. *The Merchants' Bank,* 6 How. 383; *The Philadelphia, etc., R. R. Co.* v. *Derby,* 14 How. 486; *The Steamboat New World* v. *King,* 16 How. 469; *The York Company* v. *Central R. R.,* 3 Wal. 107; *Walker* v. *The Transportation Co.,* 3 Wal. 150; *Ex. Co.* v. *Kountze Brothers,* 8 Wal. 342; *N. Y. C. R. R. Co.* v. *Lockwood,* 1 Amer. Law Times, N. S. 21, and 17 Wal. 357. The earlier English cases, such as *Hinton* v. *Dibbin,* 2 Q. B. 646, and *Wyld* v. *Pickford,* 8 M. & W. 443, were in entire accord with the decisions of the Supreme Court of the United States. But the later decisions, made between 1832 and 1854, held the opposite doctrine. See *Carr* v. *The Lancashire R. W. Co.,* 7 Exch. 707. This change of ruling is fully shown in the opinion of Mr. Justice BLACKBURN in *Peek* v. *North Staffordshire Railway Co.,* 10 House of Lords Cases, 473.

Parliament in 1854 passed an act called "the railway and canal traffic act," declaring that railway and canal companies should be liable for negligence of themselves or their servants, notwithstanding any notice or condition, unless the court or judge trying the cause should adjudge the conditions just and reasonable. 1 Fisher C. L. Dig. 1466.

The condition written upon the back of the ticket given the appellee was in the following words:

"In consideration of receiving this ticket, I voluntarily assume all risk of accidents, and expressly agree that the company shall not be liable under any circumstances, whether by negligence of their agents or otherwise, for any injury to my person, or for any loss or injury to my property; and I agree that as for me, in the use of this ticket, I will not con-

sider the company as common carriers, or liable to me as such."

The facts and principle involved in the case of *Railroad Company* v. *Lockwood, supra*, are very similar to those involved in the present case. The ruling there is an authority directly in point here. The facts of that case are thus stated:

" The plaintiff in this case was a drover, injured whilst travelling on a stock train of the defendant, proceeding from Buffalo to Albany, and the suit was brought to recover damages for the injury. He had cattle in the train, and had been required, at Buffalo, to sign an agreement to attend to the loading, transporting, and unloading of his cattle, and to take all risk of injury to them and of personal injury to himself, or to whomsoever went with the cattle ; and he received what is called a drover's pass, certifying that he had shipped sufficient stock to pass free to Albany, but declaring that the acceptance of the pass was to be considered a waiver of all claims for damages or injuries received on the train. The agreement stated its consideration to be the carrying of the plaintiff's cattle at less than tariff rates. It was shown on the trial, that these rates were about three times the ordinary rates charged, and that no drover had cattle carried on those terms ; but that all signed similar agreements to that which was signed by the plaintiff, and received similar passes. Evidence was given on the trial tending to show that the injury complained of was sustained in consequence of negligence on the part of the defendants or their servants, but they insisted that they were exempted by the terms of the contract from responsibility for all accidents, including those occurring from negligence, at least the ordinary negligence of their servants, and requested the judge so to charge. This he refused, and charged that if the jury were satisfied that the injury occurred without any negligence on the part of the plaintiff, and that the negligence of the defendants caused the injury, they must find for the plaintiff, which they did."

The court, after a very able review of the American and English authorities, uses the following language:

"It is argued that a common carrier, by entering into a special contract with a party for carrying his goods or person on modified terms, drops his character and becomes an ordinary bailee for hire, and, therefore, may make any contract he pleases. That is, he may make any contract whatever, because he is an ordinary bailee; and he is an ordinary bailee because he has made the contract.

"We are unable to see the soundness of this reasoning. It seems to us more accurate to say that common carriers are such by virtue of their occupation, not by virtue of the responsibilities under which they rest. Those responsibilities may vary in different countries, and at different times, without changing the character of the employment. The common law subjects the common carrier to insurance of the goods carried, except as against the act of God or public enemies. The civil law excepts, also, losses by means of any superior force, and any inevitable accident. Yet the employment is the same in both cases. And if by special agreement the carrier is exempted from still other responsibilities, it does not follow that his employment is changed, but only that his responsibilities are changed. The theory occasionally announced, that a special contract as to the terms and responsibilities of carriage changes the nature of the employment, is calculated to mislead. The responsibilities of a common carrier may be reduced to those of an ordinary bailee for hire, whilst the nature of his business renders him a common carrier still. Is there any good sense in holding that a railroad company, whose only business is to carry passengers and goods, and which was created and established for that purpose alone, is changed to a private carrier for hire by a mere contract with a customer, whereby the latter assumes the risks of inevitable accidents in the carriage of his goods? Suppose the contract relates to a single crate of glass or crockery, whilst at the same time the carrier receives from the same person twenty other parcels,

respecting which no such contract is made. Is the company a public carrier as to the twenty parcels and a private carrier as to the one?"

Again the court say: "If the customer had any real freedom of choice, if he had a reasonable and practicable alternative, and if the employment of the carrier were not a public one, charging him with the duty of accommodating the public in the line of his employment; then, if the customer chose to assume the risk of negligence, it could with more reason be said to be his private affair, and no concern of the public. But the condition of things is entirely different, and especially so under the modified arrangements which the carrying trade has assumed. The business is mostly concentrated in a few powerful corporations, whose position in the body politic enables them to control it. They do, in fact, control it, and impose such conditions upon travel and transportation as they see fit, which the public is compelled to accept. These circumstances furnish an additional argument, if any were needed, to show that the conditions imposed by common carriers ought not to be adverse (to say the least) to the dictates of public policy and morality. The status and relative position of the parties render any such conditions void. Contracts of common carriers, like those of persons occupying a fiduciary character, giving them a position in which they can take undue advantage of the persons with whom they contract, must rest upon their fairness and reasonableness. It was for the reason that the limitations of liability first introduced by common carriers into their notices and bills of lading were just and reasonable, that the courts sustained them. It was just and reasonable that they should not be responsible for losses happening by sheer accident, or dangers of navigation that no human skill or vigilance could guard against; it was just and reasonable that they should not be chargeable for money or other valuable articles liable to be stolen or damaged, unless apprised of their character or value; it was just and reasonable that they should not be responsible for articles liable to rapid decay, or

for live animals liable to get unruly from fright and to injure themselves in that state, when such articles or live animals became injured without their fault or negligence.    And when any of these just and reasonable excuses were incorporated into notices or special contracts assented to by their customers, the law might well give effect to them without the violation of any important principle, although modifying the strict rules of responsibility imposed by the common law. The improved state of society and the better administration of the laws, had diminished the opportunities of collusion and bad faith on the part of the carrier, and rendered less imperative the application of the iron rule, that he must be responsible at all events.    Hence, the exemptions referred to were deemed reasonable and proper to be allowed.    But the proposition to allow a public carrier to abandon altogether his obligations to the public, and to stipulate for exemptions that are unreasonable and improper, amounting to an abdication of the essential duties of his employment, would never have been entertained by the sages of the law.

" Conceding, therefore, that special contracts, made by common carriers with their customers, limiting their liability, are good and valid so far as they are just and reasonable; to the extent, for example, of excusing them for all losses happening by accident, without any negligence or fraud on their part; when they ask to go still further, and to be excused for negligence—an excuse so repugnant to the law of their foundation and to the public good—they have no longer any plea of justice or reason to support such a stipulation, but the contrary. . And then, the inequality of the parties, the compulsion under which the customer is placed, and the obligations of the carrier to the public, operate with full force to divest the transaction of validity."

In the above case, the court reached and stated the following conclusions of law:

" 1. That a common carrier can not lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law.

" 2. That it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants.

" 3. That these rules apply both to carriers of goods and carriers of passengers for hire, and with special force to the latter.

" 4. That a drover travelling on a pass, such as was given in this case, for the purpose of taking care of his stock on the train, is a passenger for hire."

The recent case of *Louisville, etc., R. R. Co.* v. *Hedger*, 13 Am. Law Reg., N. S. 145, is in accord with the foregoing cases. The note to such case contains a very full collection of the cases bearing upon the question under examination.

We are of opinion that the facts stated in the second paragraph of the answer did not constitute a defence, and that the ruling of the court thereon was correct.

The third paragraph of the answer proceeds upon the theory that the appellee was travelling on a free pass, and therefore the appellant was not liable. The only affirmative averment in this paragraph is, that appellee was travelling on a free pass. The other averments are denials of what the plaintiff was required to prove. But it is well settled that even in the case of a person riding on a free pass, common carriers of passengers are held to the same liability as for those paying fare. Pierce Rail. 478, 483; *Gillenwater* v. *The Madison, etc., R. R. Co.*, 5 Ind. 339; *Indiana Central R. W. Co.* v. *Mundy*, 21 Ind. 48; Redf. Railw., sec. 149, note.

In our opinion, the appellee was not riding on a free pass. It is well settled that a person travelling on a pass, such as was given in this case, for the purpose of taking care of his stock on the train, is a passenger for hire. A person who receives a free pass as part of a transaction beneficial to the carrier (*e. g.*, a drover who receives a pass to travel with stock on which he pays freight) is not merely a gratuitous passenger. Shearman & Redfield Negligence, 2d ed., sec.

263; *Railroad Company* v. *Lockwood, supra; The I., B. & W. R. W. Co.* v. *Beaver,* 41 Ind. 493.

The court committed no error in sustaining the demurrer to the third paragraph of the answer.

The fourth paragraph was the same as the third, except that it set out the contract for the shipment of the hogs, and that the pass was given as a part of said transaction. Our ruling on the third paragraph covers this paragraph.

It is next claimed that the court erred in striking out the fifth paragraph of the answer. This answer simply constituted a specific denial of the averments of the complaint. Every fact averred therein was admissible under the general denial, and, in fact, evidence was admitted on the trial in reference to the facts therein averred. There was no error in striking it out.

We have been unable to discover any ground for a *venire de novo.* None is pointed out by counsel. There was no error in overruling it.

There was nothing in conflict between the special and general verdicts. There was certainly nothing in the special findings that entitled the appellant to judgment. The general and special verdicts were consistent with each other. All the facts found were unfavorable to the appellant. The motion was correctly overruled.

The motion in arrest of judgment raised the same questions which we have considered on the demurrers to the complaint. The motion was properly overruled.

This leaves for our determination the question whether the court erred in overruling the motion for a new trial.

The first and second causes assigned for a new trial constitute no valid reason therefor.

Having reached the conclusion that the contract filed with and made a part of the second paragraph of the answer constituted no defence to the action, it necessarily results that the court committed no error in excluding it from the jury. The appellant was not injured by such ruling.

The fourth reason for a new trial is, that the court erred in

admitting evidence of the speed with which trains were run on appellant's road before and after the accident. One of the questions in the case was, whether the accident resulted from the rapid speed at which the train was running. Evidence was offered on that point by both parties. One set of witnesses placed the speed at from twelve to twenty miles an hour, and the other from twenty to forty miles per hour. The appellant proved the rate of speed as fixed by the time tables. The appellee attempted to prove that in certain instances the rate of speed as fixed had been disregarded. Several of the witnesses in attempting to fix the rate of speed at which the train was running at the time of the accident spoke of the rate of speed at which other trains had been run both before and after the accident. This was done by witnesses on both sides. The real question was the rate of speed at which the train was running at the time of the accident. The evidence as to the speed of other trains was intended to illustrate the point under examination by comparison. We do not think the jury was misled by such evidence. The thirteenth instruction given by the court at the request of the appellant was well calculated to direct the attention of the jury to the real point under examination. It was as follows: "No act of said defendant at a time or place different from the time and place of the accident complained of, and connected with it, can be taken in consideration by the jury in determining this case."

The sixth instruction given by the court, of its own motion, expressly withdrew from the jury all evidence relating to the condition of the road at any other time or place than the time when, and the place where, the accident occurred.

The above instruction also had relation to the fifth reason for a new trial. The evidence admitted in reference to the condition of the track at and near the place of the accident, and after it had occurred, was admitted for the purpose of illustrating and demonstrating what its condition was at the time of the accident.

There is nothing in the sixth reason for a new trial. The

fact offered to be proved could in no possible way affect the question involved.

The second, third, and fourth instructions asked by the appellant and refused by the court, embraced the same questions which we have considered on sustaining the demurrers to the second, third, and fourth paragraphs of the answer, and, for the reasons already given, were correctly refused.

The fifth and eighth instructions asked and refused were correctly refused, because they were substantially given by the court in its twelfth instruction.

The fourteenth instruction asked and refused was given by the court in the eighth instruction, and was, for that reason, correctly refused.

The fourth instruction given by the court, of its own motion, charged the jury that the burden of proof was upon the plaintiff, and that he was required to establish by a preponderance of the evidence the truth of all his material allegations of negligence. Surely the wrong number has been used in preparing the motion for a new trial, for we are unable to discover any ground of objection on the part of appellant to such instruction.

The seventh instruction related to the speed of the train on which the plaintiff was travelling, and the speed of other trains before and after the accident, over that portion of the road where the accident occurred. The court charged the jury, that in determining whether the train which met with the accident was running at a higher rate of speed than was safe and prudent, taking into consideration that portion of the track, they might consider the rate of speed at which other trains had been run over that portion of the road, both before and after the accident. We think this instruction was unobjectionably correct. It was the true criterion for determining whether the train in question was running too fast.

The thirteenth instruction related to the liability of the appellant in transporting the appellee on a freight train. In *The Indianapolis, etc., Railway Co.* v. *Beaver*, 41 Ind. 493, the

court say : "Whether a railroad company undertakes to convey its passengers on a freight or passenger train, in a caboose or well cushioned chair, its duty is to so run and manage the train that passengers shall not by its own carelessness be killed or injured."

The instruction complained of was in accordance with the law as enunciated in the above opinion.

The fourteenth instruction had reference to the measure of damages, if the finding was for the plaintiff. The learned counsel for appellant have not pointed out any objection to it, and we have not discovered any.

The tenth reason for a new trial challenges the action of the court in permitting an amendment of the complaint on the trial, and in refusing to continue the cause upon affidavit, in consequence of such amendment.

The complaint, as it originally stood, was as follows : "Whereby the plaintiff, without fault on his part, was grievously bruised, hurt, and wounded, and became for a long time sick and disabled, and was obliged to, and actually did, expend about the sum of two hundred dollars for surgical and other treatment and attendance in attempting to cure himself; and that plaintiff's collar-bone was broken, and his shoulder dislocated."

Upon the trial, the plaintiff asked and obtained the leave of the court to amend the second paragraph of the complaint by adding the words, "and shoulder-blade was broken."

Thereupon one of the attorneys for appellant filed an affidavit, alleging, in substance, that appellant had been taken by surprise by such amendment; that in taking evidence in said case, the defendant relied upon the statements and allegations of injury as stated in the complaint, and did not procure evidence, or seek to procure evidence, to show that the plaintiff's shoulder-blade was not broken, because no such injury was alleged in said complaint; that affiant believes that said defendant can prove by competent evidence that the permanent injury to plaintiff's shoulder-blade was caused by the negligence, carelessness, and unskilful-

ness of the plaintiff himself and his servants and employees, and would have done so had the allegation been made originally in said complaint, and believes he can do so if time is granted defendant; that he has no witnesses now in attendance, nor in this county, by whom he can prove such facts, which he believes to be true, but expects to do so by the next term, if a continuance is granted for such purpose.

In our opinion, the court committed no error in refusing to continue the cause.

The amendment made on the trial did not change the issue, or add anything to what was already charged in the complaint. The complaint charged that the plaintiff was grievously bruised, hurt, and injured. Under these general allegations, the plaintiff was entitled to prove any and all injuries which he received, and which were the natural consequence of the wrongful act of the appellant. It did not add a new or different cause of action, but simply specified an injury received, the proof of which was admissible under the general allegations. The specific averments of injury did not limit and restrict the proof of the plaintiff to the specific injuries charged. Where the law does not imply the damage, as the natural and necessary consequence of the wrongful act, it should be set forth with particularity. See sections 89 and 91, 2 Greenl. Ev.; *The Jeffersonville, etc., R. R. Co.* v. *Hendricks,* 41 Ind. 48, but special reference is made to pp. 62, 63, and 64.

This leaves for our examination and decision the seventh reason for a new trial, which is, that the answers of the jury to the special interrogatories submitted are not sustained by the evidence.

We have carefully read, and duly considered, all the evidence in the record, and while we would have found differently upon some of the questions submitted, the evidence being conflicting, we cannot disturb the finding of the jury upon the questions of fact submitted. It should be observed, in this connection, that the appellant did not assign as a

reason for a new trial, that the general verdict was not sustained by the evidence.

With a general verdict in favor of the appellee, the correctness of which is not questioned, we could not reverse the case on the sufficiency of the evidence, especially where it is directly conflicting, to support the special findings. The general and special verdicts are consistent with each other.

If the general and special verdicts are consistent with each other, then both should stand. If they are inconsistent, and the special verdict is not supported by the evidence, the appellee, and not the appellant, had the right to complain. Suppose we should find that the special findings were not supported by the evidence, how would that aid the appellant? The general verdict is unquestioned, and necessarily implies that the appellant was guilty of negligence. The general verdict includes all that is in the special findings, and more.

The judgment is affirmed, with costs.